**PARKER v. UNITED STATES.**

No. 4083.

Circuit Court of Appeals, First Circuit.

Jan. 11, 1946.

Richard Wait, of Boston, Mass., for appellant.

Joseph M. Hargedon, of Boston, Mass. (Edmund J. Brandon, of Boston, Mass., and J. Stephen Doyle, of Boston, Mass., and Handley C. Harrison, both of Washington, D. C., with him on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Howard B. Parker is here again, this time on appeal from an order of the District Court denying his petition to be finally discharged from further commitment and liability for civil contempt. The petition was based upon the legal proposition, which the court below rejected, that Parker's supervening discharge in bankruptcy had relieved him from further lia-

bility for the unpaid amount of a compensatory fine which had been imposed upon him in civil contempt proceedings.

The contempt proceedings grew out of a suit in equity brought by the United States of America and the Secretary of Agriculture against Green Valley Creamery, Inc., to obtain a mandatory injunction requiring the said corporation to comply with the provisions of Order No. 4, as amended, issued by the Secretary of Agriculture pursuant to the provisions of the Agricultural Marketing Agreement Act of 1937, 50 Stat. 246, 7 U.S.C.A. § 601 et seq. The equity suit went in complainant's favor, and the final decree therein was upheld by us on appeal in Green Valley Creamery, Inc., v. United States, 1 Cir., 1939, 108 F.2d 342.

Thereafter, a petition for attachment for contempt was filed by the United States against Green Valley Creamery, Inc., and Howard B. Parker, its sole stockholder and dominant officer, alleging disobedience of and failure to comply with the decree of the District Court. An order was entered on January 27, 1941, adjudging Parker in civil contempt and committing him to jail until Green Valley Creamery, Inc., should effect compliance with the Act and the mandatory injunction theretofore issued against the said corporation. On appeal, we vacated this order and remanded the case to the District Court for further proceedings in conformity with directions contained in our opinion. Parker v. United States, 1 Cir., 1942, 126 F.2d 370.

After appropriate proceedings upon remand, the District Court entered an order on June 16, 1942, adjudging Parker in civil contempt of both the interlocutory and final decree in the aforementioned equity suit, and as reparation for the contempt imposing a compensatory fine upon Parker, for the benefit of the Market Administrator, in the sum of $42,236.74, which was computed to be the amount of the loss caused to the Market Administrator by Parker's disobedience of the court decrees. The order required payment of this sum within ten days, in default of which it was directed that Parker be committed to jail until payment was made, or until a further order of the court.

Parker appealed from this order of June 16, 1942, filing a supersedeas bond in the sum of $20,000.[1] We affirmed the order imposing the compensatory fine, in Parker v. United States, 1 Cir., 1943, 135 F.2d 54, certiorari denied 1943, 320 U.S. 737, 64 S.Ct. 35, 88 L.Ed. 436. Our opinion in that case describes the conduct of Parker constituting the contempt, and explains how the amount of the compensatory fine was calculated. It is unnecessary to repeat the discussion of these matters in the present opinion. After our mandate affirming the order went down, the said sum of $20,000 was paid over to the Market Administrator in partial settlement of the fine.

On October 18, 1943, Parker filed a voluntary petition in bankruptcy in the court below and was thereupon duly adjudicated a bankrupt. On the same day, he surrendered himself to the United States marshal for commitment pursuant to the contempt order of June 16, 1942, but he was forthwith released from the custody of the marshal upon the filing in the District Court of a memorandum of recognizance in the amount of $5,000.

The trustee in bankruptcy of Parker's estate took possession of all his property and administered the same for the benefit of creditors. The Market Administrator filed with the trustee a proof of claim for the balance of the compensatory fine, the same was allowed, and a dividend in the amount of $1,950.16 was paid to the Market Administrator thereon. On May 15, 1944, Parker received his discharge in bankruptcy. The unpaid balance of the compensatory fine now stands at $20,286.58.

Subsequent to his discharge in bankruptcy, Parker filed his petition in the contempt proceedings, praying "that an appropriate order be entered discharging him from further commitment and continued liability and finally disposing of the said petition for attachment for contempt. * * *" The petition was denied by order entered February 20, 1945, from which order the present appeal was taken. In a memorandum opinion accompanying

---

[1] The bond was subsequently canceled pursuant to decree of the District Court, and the sum of $20,000 cash was paid to the clerk of that court for the use and benefit of the Market Administrator, with directions to pay the same to the Market Administrator in the event that the condition set forth in the supersedeas bond should not be fulfilled.

the order (United States v. Green Val. Creamery, 59 F.Supp. 153, 154), the District Court, after citing certain cases, stated:

"The reasoning of these decisions seems to be that, while the fine imposed by the court may be a provable debt as between the contemnor and the person for whose benefit it has been ordered paid, it is not a debt within the meaning of the Bankruptcy Act * * * as between the court and the contemnor, and for that reason a discharge granted by the bankruptcy court will not affect the fine imposed. In other words, the fine has the character of a debt as between the bankrupt and the person for whose benefit it was owed and, in addition, is a penalty levied by the court for a contumacious act. The discharge in bankruptcy can only affect the fine in the first-described status.

"A discharge in bankruptcy does not operate to affect a power inherent in the courts of justice to suppress contempts by an immediate attachment of the offender. To hold otherwise would seriously affect the orderly administration of justice and deprive the court of one of its most elementary powers.

"I therefore find and rule that, as a matter of law, the discharge in bankruptcy issued to the petitioner Parker does not operate to bar a collection of the unpaid balance of the compensatory fine imposed by this Court. The petitioner's claim for an order barring the collection of the balance of his fine is denied."

Though the question of our jurisdiction was not raised or discussed in the briefs or oral argument, it occurred to us that maybe the order appealed from was not a "final decision" within the meaning of 28 U.S.C.A. § 225. The order, which adjudged and decreed "That the said petition of Howard B. Parker for final order upon petition for attachment for contempt be and the same hereby is denied", seemed to us to be, superficially at least, of an interlocutory character. At our suggestion, the parties submitted supplemental memoranda on the jurisdictional point. The memorandum filed by the United States as appellee expresses the view that this court has jurisdiction of the appeal, and states that the government would welcome a decision on the merits.

We have not always correctly understood what constitutes a "final decision" under 28 U.S.C.A. § 225. See Puerto Rico Railway Light & Power Co. v. United States, 1 Cir., 1942, 131 F.2d 491, 494, disapproved in Catlin v. United States, 1945, 324 U.S. 229, 233, 65 S.Ct. 631, with which compare Radio Station WOW v. Johnson, 1945, 326 U.S. 120, 126, 65 S.Ct. 1475. The cases on what is a "final decision" are legion. We do not propose to make an extended review of them in this opinion, but content ourselves with stating rather summarily our conclusion that the present appeal has been properly taken.

The requirement of finality is based upon a strong general policy against allowing piecemeal appeals. Here the original suit in equity, out of which the contempt proceedings arose, has long since gone to final decree which has been affirmed on appeal. The order now appealed from, as is apparent from the accompanying memorandum, finally adjudicated that Parker is under a liability to pay the balance of the compensatory fine notwithstanding his discharge in bankruptcy. Nothing further remains to be determined on the merits. If the order is not appealable now, it may never be appealable. Meanwhile, Parker is at liberty upon a memorandum of recognizance in the sum of $5,000, under a continuing threat that he may subsequently be taken into custody and confined to jail to coerce further payment on account of the fine, if and when he may come into funds in the future. But any such further proceedings would be in the nature of an execution, to enforce an earlier judgment on the merits. As the Supreme Court has many times laid down, a judgment is final for purposes of appeal when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined. Berman v. United States, 1937, 302 U.S. 211, 212, 213, 58 S.Ct. 164, 82 L.Ed. 204, and cases cited.

This brings us to the merits; and here we take a different view from that of the District Court.

The Supreme Court has had many occasions to emphasize the importance of the distinction between a proceeding in civil contempt and one in criminal contempt. Bessette v. W. B. Conkey Co., 1904, 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997; Matter of Christensen Engineering Co., 1904, 194 U.S. 458, 24 S.Ct. 729, 48 L.Ed. 1072; Doyle v. London Guarantee & Accident Co., Ltd., 1907, 204 U.S. 599, 27 S.Ct.

313, 51 L.Ed. 641; Gompers v. Bucks Stove & Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874; In re Merchants' Stock & Grain Co., 1912, 223 U.S. 639, 32 S.Ct. 339, 56 L.Ed. 584; Ex parte Grossman, 1925, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527, 38 A.L.R. 131; Leman v. Krentler-Arnold Hinge Last Co., 1932, 284 U.S. 448, 52 S.Ct. 33, 76 L.Ed. 519; Lamb v. Cramer, 1932, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715; Fox v. Capital Co., 1936, 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67; McCrone v. United States, 1939, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108.

Proceedings in civil contempt are between the original parties and are instituted and tried as a part of the main cause. Though such proceedings are "nominally those of contempt" (Worden v. Searls, 1887, 121 U.S. 14, 26, 7 S.Ct. 814, 820, 30 L.Ed. 853), the real purpose of the court order is purely remedial—to coerce obedience to a decree passed in complainant's favor, or to compensate complainant for loss caused by respondent's disobedience of such a decree. If imprisonment is imposed in civil contempt proceedings, it cannot be for a definite term. Gompers v. Bucks Stove & Range Co., supra, 221 U.S. at pages 442–444, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874; In re Kahn, 2 Cir., 1913, 204 F. 581. The respondent can only be imprisoned to compel his obedience to a decree. If he complies, or shows that compliance is impossible, he must be released, for his confinement is not as punishment for an offense of a public nature. If a compensatory fine is imposed, the purpose again is remedial, to make reparation to a complainant injured by respondent's disobedience of a court decree. While respondent may be confined to coerce payment of the compensatory fine, he must be released if he pays the fine or shows his utter inability to do so—confinement beyond that point would be punitive, not remedial. If complainant makes a showing that respondent has disobeyed a decree in complainant's favor and that damages have resulted to complainant thereby, complainant is entitled as of right to an order in civil contempt imposing a compensatory fine. Union Tool Co. v. Wilson, 1922, 259 U.S. 107, 42 S.Ct. 427, 66 L.Ed. 848; Enoch Morgan's Sons Co. v. Gibson, 8 Cir., 1903, 122 F. 420, 423; L. E. Waterman Co. v. Standard Drug Co., 6 Cir., 1913, 202 F. 167. The court has no discretion to withhold the appropriate remedial order. In this respect the situation is unlike that of criminal contempt where the court in its discretion may withhold punishment for the past act of disobedience. An order imposing a compensatory fine in a civil contempt proceeding is thus somewhat analogous to a tort judgment for damages caused by wrongful conduct.

On the other hand, a proceeding in criminal contempt is a separate and independent proceeding at law, with the public on one side and the respondent on the other. The purpose of sentence in such a proceeding "is punitive in the public interest to vindicate the authority of the Court and to deter other like derelictions." Ex parte Grossman, 1925, 267 U.S. 87, 111, 45 S.Ct. 332, 334, 69 L.Ed. 527, 38 A.L.R. 131. Therefore, in such a proceeding imprisonment may be imposed for a definite term. Stewart v. United States, 8 Cir., 1916, 236 F. 838. Or respondent may be subjected to a punitive fine. Such a fine is usually payable to the United States. But without derogating from the punitive character of the proceeding, the court may have power to order the fine to be paid in whole or in part to some person injured by the contumacious act. Michaelson v. United States, 1924, 266 U.S. 42, 65, 45 S.Ct. 18, 69 L.Ed. 162, 35 A.L.R. 451.

The respondent is entitled to due notice of the nature of the proceeding against him—whether of criminal or civil contempt. In re Guzzardi, 2 Cir., 1935, 74 F.2d 671; McCann v. New York Stock Exchange, 2 Cir., 1935, 80 F.2d 211, 214; Federal Trade Commission v. A. McLean & Son, 7 Cir., 1938, 94 F.2d 802.[2] If respondent is answering a charge of criminal contempt, he "is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself." Gompers v. Bucks Stove & Range Co., supra, 221 U.S. at page 444, 31 S.Ct. at page 499, 55 L.Ed. 797, 34 L.R.A.,N.S., 874. If he is called

---

[2] Possibly a proceeding for criminal contempt might be combined with one for civil contempt if respondent is adequately notified of the twofold nature of the proceeding. See Kreplik v. Couch Patents Co., 1 Cir., 1911, 190 F. 565. In such case a punitive fine, or imprisonment for a term might be imposed on the criminal side, and in addition a compensatory fine might be imposed on the civil side.

to answer in a civil contempt proceeding, a punitive fine cannot be imposed upon him. Where a fine is imposed in such a proceeding, it must not exceed the actual loss to the complainant caused by respondent's violation of the decree in the main cause plus complainant's reasonable expenses in the proceedings necessitated in presenting the contempt for the judgment of the court. Christensen Engineering Co. v. Westinghouse Air Brake Co., 2 Cir., 1905, 135 F. 774, 782; Eustace v. Lynch, 9 Cir., 1935, 80 F.2d 652, 656.

Since the complainant in the main cause is the real party in interest with respect to a compensatory fine or other remedial order in a civil contempt proceeding, if for any reason complainant becomes disentitled to the further benefit of such order, the civil contempt proceeding must be terminated. Worden v. Searls, 1887, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853; Gompers v. Bucks Stove and Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874. Such proceeding not having been instituted to punish for a contumacious act in vindication of the court's authority, the court has no such independent interest in maintaining in force its order imposing a compensatory fine as would justify it in transmuting the proceeding into one for criminal contempt, with the fine now regarded as punitive. But the required vacation of the remedial order, in the event supposed, does not trench upon the power of the court, in a proper case, to vindicate its own authority by punishment of an offender for a criminal contempt. Criminal and civil proceedings for contempt are not mutually exclusive. In both Worden v. Searls, supra, and Gompers v. Bucks Stove & Range Co., supra, the court made clear that the termination of the civil contempt proceedings was without prejudice to the power of the court to institute a separate and independent proceeding for criminal contempt. And see Parker v. United States, 1 Cir., 1942, 126 F.2d 370, 382. Such a proceeding would of course require a new citation and would have to be tried in accordance with the procedures and limitations applicable to criminal contempt.

There is no doubt that the contempt proceeding in the case at bar was instituted and maintained throughout as one of civil contempt. This is true, despite the fact that the petition for attachment for contempt was filed by the United States. McCrone v. United States, 1939, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108. The United States was acting in its capacity as complainant in the original equity suit brought to compel Green Valley Creamery, Inc., to comply with the milk marketing order of the Secretary of Agriculture and to make the required payments into the equalization pool operated by the Market Administrator; and the purpose of the contempt petition was to obtain for the Market Administrator as agent of the United States the benefit of the decree in the equity suit. The compensatory fine was measured by the loss to the Market Administrator occasioned by Parker's disobedience of the interlocutory and final decrees in such suit.

This brings us to the decisive inquiry in the case: What is the effect of Parker's discharge in bankruptcy on his liability to pay the balance of the compensatory fine?

It is no doubt true that a fine imposed for a criminal contempt is not a "debt" within the meaning of § 1(14) of the Bankruptcy Act, 52 Stat. 841, 11 U.S. C.A. § 1(14). See In re Moore, D.C.W.D. Ky.1901, 111 F. 145. Being not a provable debt, liability for such a criminal fine is not affected by a discharge in bankruptcy, § 17, 11 U.S.C.A. §˜35. It was not in the contemplation of Congress that the federal bankruptcy power should be employed to pardon a bankrupt from the consequences of a criminal offense, whether the criminal contempt be against the authority of a state or federal court.

But there would seem to be no a priori reason why liability for a compensatory fine imposed in a civil contempt proceeding should not be deemed a "debt" within the meaning of § 1(14) of the Bankruptcy Act, and a provable debt under § 63, 11 U.S.C.A. § 103. The court below in its memorandum opinion in the present case assumes it to be a provable debt. In Hendryx v. Fitzpatrick, C.C.D.Mass.1884, 19 F. 810, 811, Judge Lowell described the compensatory fine as "a debt of a civil nature." As we have seen, a complainant who has obtained a court decree in his favor is entitled as of right to such a remedial order against a person whose disobedience of the decree has caused complainant loss, an order imposing a compensatory fine in a civil contempt proceeding being not unlike a tort judgment for money damages caused by wrongful conduct. Within the meaning of § 63, sub. a (1), it would seem to be "a

fixed liability, as evidenced by a judgment * * * absolutely owing at the time of the filing of the petition" in bankruptcy.

However this may be, we do not have to decide in the instant case whether the compensatory fine was a debt properly provable by the Market Administrator in Parker's bankruptcy proceeding. The fact is, the Market Administrator did so prove, his claim was allowed, and he received a dividend thereon. The government therefore cannot now be heard to say that Parker's liability for the compensatory fine was not a provable debt.

Assuming, as we must, for the purposes of this case, that it was a provable debt, Parker's discharge in bankruptcy has released him from further liability to the Market Administrator thereon unless the debt falls within one of the exceptional categories of provable debts defined in § 17 of the Bankruptcy Act. Of the six described categories of provable debts not released by a discharge in bankruptcy, the only one which could possibly be thought to cover the present case would be the fourth one—debts created by the bankrupt's "fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." 52 Stat. 851, 11 U. S.C.A. § 35.

Parker's disobedience of the court decrees, while inflicting harm upon the Market Administrator by depriving him of the benefit of those decrees, cannot be described as a "fraud" upon him. Parker was not guilty of any embezzlement, misappropriation or defalcation in breach of any fiduciary duty owed by him to his wholly owned corporation, Green Valley Creamery, Inc., of which he was an officer and director. Furthermore, it seems that the provable debts in the category mentioned, which survive a discharge in bankruptcy, are debts created by embezzlement, etc., owing to the beneficiary of the broken fiduciary obligation. Parker certainly owed no fiduciary obligation to the Market Administrator.

It follows that, as against the Market Administrator, Parker's discharge in bankruptcy has released him from further liability to pay the compensatory fine. We can find nothing in the Bankruptcy Act to sustain the view of the court below that the compensatory fine had a twofold aspect—namely, that it constituted a provable and dischargeable debt as between the bankrupt and the person to whom it was ordered to be paid, but at the same time did not constitute a debt as between the court and the contemnor and hence in that aspect was not affected by the discharge in bankruptcy. If this were so, the anomalous result would follow that, though the creditor for whose benefit the compensatory fine was imposed has lost the right to claim the balance due thereon, he gets it just the same, because the contempt order, if it remains unaffected by the discharge in bankruptcy, requires that the fine be paid to such creditor. As we have already seen, the compensatory fine is not properly to be regarded as a penalty levied by the court for a contumacious act. Now that the creditor, in whose sole interest the fine was imposed, has become disentitled to claim it further, the court cannot change the characteristic of the fine from a remedial one to a punitive one payable to the United States as for a criminal contempt. It cannot do this, because the contempt proceeding from its inception was one of civil contempt.

In conclusion, we add some comment on certain decided cases, most of which were cited in the District Court's memorandum opinion.

The leading case is an old one, Spalding v. State of New York ex rel. Backus, 1846, 4 How. 21, 22, 11 L.Ed. 858. In that case, Backus obtained a money judgment against Spalding. Thereafter, Backus filed a creditor's bill against Spalding in the New York Court of Chancery, in which proceeding an injunction was issued restraining Spalding from transferring or in any way disposing of any of his property. On March 21, 1842, Spalding was adjudged guilty of contempt of court for willful disobedience of the injunction and was ordered to pay a fine of $3,000 to the clerk of the court "subject to the further order of the court." In April, 1842, Spalding filed his voluntary petition in bankruptcy, and in the following September received his discharge. Thereafter, Backus applied to the Vice-Chancellor for a mittimus to enforce the collection of the fine. In response to an order to show cause, Spalding presented to the Vice-Chancellor his discharge in bankruptcy. The Vice-Chancellor ruled that the discharge did not have the effect of releasing Spalding from the obligation to pay the fine, and committed him to jail until he should pay the fine to the clerk of the court, subject to the further

order of the court. Upon appeal to the Chancellor, the order of the Vice-Chancellor was affirmed. Spalding further appealed to the Court for the Correction of Errors, which also affirmed the order of the Vice-Chancellor. The court, in an opinion by Chief Justice Nelson, analyzed the New York statutory provisions under which the contempt proceeding was had, and held that the fine had been imposed as a penalty "for a strictly criminal offense, and inflicted under a strictly criminal proceeding." It so held, notwithstanding a provision of the law that if actual loss shall have been produced by the misconduct alleged, a fine shall be imposed sufficient to indemnify the party, which shall be paid over on the order of the court; and the payment and acceptance of such fine shall be a bar to any action by the aggrieved party to recover damages for said injury. Cf. Michaelson v. United States, 1924, 266 U.S. 42, 65, 45 S.Ct. 18, 69 L.Ed. 162, 35 A.L.R. 451. Regarding the fine as one for criminal contempt, the court concluded that it was not a debt within the meaning of the Bankruptcy Act and that it was unaffected by Spalding's discharge in bankruptcy. Upon writ of error, the Supreme Court of the United States affirmed the judgment of the state court without opinion. It is to be noted that Backus had not proved for the amount of the fine in Spalding's bankruptcy proceedings. Indeed, under no possible view could he have done so, for the Vice-Chancellor had not ordered the fine to be paid over to the creditor. The fine had been ordered to be paid to the clerk of the court, subject to further order of court, which presumably would await the final disposition of Backus' creditor's bill.

In re Koronsky, 2 Cir., 1909, 170 F. 719, involved an order by the City Court for the City of New York fining the bankrupt for contempt. Dollard v. Koronsky, 1908, 61 Misc. 392, 113 N.Y.S. 793. The contempt consisted in deceit practised upon the court by the filing of a perjurious affidavit to the effect that the defendant had not been served with process in a suit upon a note upon which judgment by default had been entered. It was held that the bankruptcy court had no authority to issue a stay order enjoining further proceedings in the state court for collection of the fine. The court pointed out that the City Court had proceeded under the same statutory provisions that were involved in the Spalding case, and said: "Manifestly the offense was one peculiarly against the court, and of the sort where the punishment of the offender is a vindication of the dignity of the court; it does not lose that character because the statute authorizes the court to turn over the amount of the fine when collected to some person pecuniarily aggrieved by the offender's conduct." [170 F. 720.]

Later cases following the foregoing precedents all happen to have involved fines for contempt imposed by state courts of New York. In re Hall, D.C.S.D.N.Y. 1909, 170 F. 721; People ex rel. Otterstedt v. Sheriff of Kings County, D.C.E.D.N.Y. 1913, 206 F. 566; In re Francisco, D.C.N. D.N.Y.1917, 245 F. 216; In re Thomashefsky, 2 Cir., 1931, 51 F.2d 1040; In re Spagat, D.C.S.D.N.Y.1933, 4 F.Supp. 926; In re Green, D.C.W.D.N.Y.1934, 6 F.Supp. 1022; In re McRoberts, D.C.W.D.N.Y.1936, 17 F.Supp. 82; In re Dearborn Mfg. Corp., D.C.E.D.N.Y.1937, 18 F.Supp. 763; In re Licht, D.C.E.D.N.Y.1937, 19 F.Supp. 774. Some of them contain the unqualified statement that fines for contempt of court are not dischargeable in bankruptcy. But in none of them does it distinctly appear that the fine in question was a compensatory fine imposed in a strictly civil contempt proceeding, and in none of them is there any considered discussion of the differing characteristics of criminal and civil contempt proceedings. Also, in none of these cases was there the added important feature, found in the case at bar, that the creditor for whose benefit the compensatory fine had been imposed had filed in the contemnor's bankruptcy proceedings a proof of claim for the amount of the fine and received a dividend thereon. The cases cited do not stand as authorities against the conclusion we have reached that Parker's petition should have been granted.

The order of the District Court is vacated and the case is remanded to that court for further proceedings in conformity with this opinion.