**WOODS, Housing Expediter, v. JIANAS.**
**Civ. A. No. 5357.**

United States District Court
W. D. Missouri, W. D.

Aug. 9, 1950.

Joseph E. Babka, Regional Atty., Office of Housing Expediter, St. Louis, Mo., for plaintiff.

J. K. Owens, Kansas City, Mo., for defendant.

REEVES, Chief Judge.

Counsel for the government in the above case instituted a proceeding entitled "Criminal Action." Subsequently there was filed an "Amended Petition for the Institution of Criminal Contempt Proceedings." The defendant was duly summonsed into court and filed his answer to the amended petition. By the second paragraph of his answer he asserted: "* * * that the plaintiff is not entitled to recover in this matter for the reason that this is an attempt to imprison this defendant for a debt which is contrary to Article II of Section 16 of the Constitution of Missouri [Mo.R.S.A.Const.1945, art. 1, § 11], and is in violation of the Statutes of the United States of America 28 U.S.C.A. § 843 [now § 2007]." And then, by paragraph 3, being the final paragraph of the answer, the following is averred: "Defendant for further answer states that he does not have the sum or sums of money set out in said complaint with which to make the refunds ordered by this Court." It appears from the petition in the alleged criminal contempt proceedings that heretofore, towit, on or about the 25th of March, 1949, an injunctive order was issued against the defendant restraining the collection of excess rentals on housing accommodations owned or operated by him and that the order was supplemented with a mandatory one directing the defendant to "restore forthwith to Thomas Cosgrove the sum of $225.00, to Thelma Bebermeyer the sum of $45.00, to Gus H. Haney the sum of $450.00, and to Mrs. R. J. Hall the sum of $200.00."

It is then averred that: "The defendant has wilfully and knowingly violated said rent regulations for housing and said acts as amended, and said permanent injunctive order by refusing to obey and make restitution as ordered by the Court, and by reason whereof is in wilful and knowing criminal contempt and should be punished as provided by law." A preliminary question is whether the acts of the defendant as set out in the petition constitute criminal or civil contempt. By Section 3691, Title 18 U.S.C.A., the Congress intimated a definition of criminal contempt as follows: "Whenever a contempt charged shall consist in willful disobedience of any lawful * * * rule, decree, or command of any district court of the United States by * * * omitting any act or

104

thing in violation thereof, *and the act or thing done or omitted also constitutes a criminal offense under any Act of Congress, or under the laws of any state in which it was done or omitted, the accused, upon demand therefor, shall be entitled to trial by a jury.*" (Emphasis mine.) It is then provided by another paragraph of said section that: "This section shall not apply * * * to contempts committed in disobedience of any lawful * * * order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States." Undoubtedly there may be a criminal contempt without the intervention of a jury. While this section provided for jury trials, in criminal contempts, under certain circumstances it did not undertake to change the law as it has prevailed over the years in respect of contempts of court. The common law rule prevails with respect to civil and criminal contempts in the federal courts as well as in the State of Missouri.

In the case of Odom v. Langston, 213 S.W.2d 948, 950, the Supreme Court of Missouri, in an exhaustive opinion, cites many authorities defining criminal contempt as being "where a person is prosecuted to preserve the power and vindicate the dignity of the court and to punish him for disobedience of its orders. Criminal contempt is punitive in its nature, and the state, the courts, and the people are interested in the prosecution."

On the other hand, and in the same opinion, a civil contempt was defined as follows: "Civil contempt is remedial and coercive in nature, and the parties chiefly interested in the conduct and prosecution are the individuals whose private rights and remedies the contempt proceedings are instituted to protect or enforce." Whether the Congress intended to provide for trial by jury only in criminal contempts is not necessary for decision. It doubtless did not. It appears from all the definitions of civil contempt that this is a proceeding for civil contempt and the language of the pleading shows that its object is remedial and coercive, and, as stated in the case of Gompers v. Bucks Stove & Range Co., 221 U.S. 418, loc. cit. 442, 31 S.Ct. 492, 498, 55 L.Ed. 797, 34 L.R.A.,N. S., 874:

"Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order. * * *."

"If imprisoned, as aptly said in Re Nevitt, [8 Cir.], 117 F. (448) 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do." See also City of Campbell, Mo. v. Arkansas-Missouri Power Co., 8 Cir., 65 F.2d 425, loc. cit. 427.

If, however, it shall be made to appear that the defendant is unable to comply with the order, then he should be discharged. See Securities and Exchange Commission v. Penfield Co., 9 Cir., 157 F. 2d 65, 67. The latter case cited with approval the case of Parker v. United States, 1 Cir., 153 F.2d 66, loc. cit. 70, 163 A.L.R. 379, as follows: "'If he complies, or shows that compliance is impossible, he must be released, for his confinement is not as punishment for an offense of a public nature.'"

In this case the evidence at the hearing on the contempt proceeding was to the effect that the defendant was financially unable to comply with the court's order. Under such circumstances he would be entitled to his discharge as otherwise it would be a case of imprisonment for debt. Accordingly, the contempt proceedings will be dismissed. The decree still stands, however, and if in the future it should appear that the defendant is able to comply with the order, then the government will be at liberty to institute another contempt proceeding.