GENERAL ELECTRIC COMPANY, a
New York Corporation, Plaintiff,

v.

Morris A. WALDMAN, individually and
trading and doing business as Belmont
Supply Company, Defendant.

Civ. A. No. 12924.

United States District Court
W. D. Pennsylvania.

Jan. 16, 1958.

Gilbert Helwig, of Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Joseph Ripp, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

Upon motion of plaintiff, General Electric Company, for a rule upon the defendant, Morris A. Waldman, individually, and trading and doing business as Belmont Supply Company, to show cause why he should not be required to pay the balance of the $1,000 fine imposed by the court on January 9, 1957, and to show cause why he should not be held in further contempt, a hearing was held and briefs submitted. The court makes the following

### Findings of Fact

1. On December 20, 1954, after hearing, this court entered an order restraining and enjoining until further order of court, the defendant above named, his agents and employees, from knowingly advertising, offering for sale or selling, at retail, in the Commonwealth of Pennsylvania, any of the commodities manufactured by plaintiff which bears the trade-mark, brand or name of plaintiff, at prices which are less than the stipu-

lated minimum retail resale prices established therefor by plaintiff pursuant to agreements between plaintiff and retailers of its commodities in the Commonwealth of Pennsylvania, except as such sales are permitted under the provisions of Pennsylvania Act of June 5, 1935, P.L. 266, 73 P.S. § 7 et seq.

2. At all times since December 20, 1954, contracts between plaintiff and retailers of its trade-marked commodities in the Commonwealth of Pennsylvania, under which plaintiff had a right to and did establish stipulated minimum retail prices for said commodities, have been and still are in force and effect.

3. Since December 20, 1954, defendant has had knowledge of the stipulated minimum retail prices established by plaintiff for plaintiff's said commodities under said agreements.

4. On June 8, 1955, defendant was adjudged in contempt of court and required to pay a fine by reason of sales of plaintiff's trade-marked products at prices which were less than the fair trade prices for such commodities in violation of the Pennsylvania Fair Trade Act and the order of court dated December 20, 1954, said sales having occurred between December 20, 1954 and June 7, 1955.

5. On November 15, 1955, defendant was adjudged in contempt of court and required to pay a fine by reason of sales of plaintiff's trade-marked products at prices which were less than the fair trade prices for such commodities in violation of the Pennsylvania Fair Trade Act and the order of court dated December 20, 1954, said sales having occurred between June 7, 1955 and November 15, 1955.

6. On January 9, 1957, defendant was adjudged in contempt of court for the third time and was fined in the sum of $1,000, "said fine to be paid to and for the benefit of plaintiff, General Electric Company", of which $250 was to be paid forthwith and the balance of $750 was suspended on condition that if any further violation by defendant of the order of this court dated December 20, 1954, was thereafter found to have occurred within one year after the date of the order, said balance was to be immediately due and payable.

7. The terms and conditions of the order of January 9, 1957, imposing the fine for the third contempt were drafted by, and pursuant to the consent and agreement of, plaintiff and defendant.

8. The violations resulting in the third adjudication of contempt were committed by or under the direction of one William Erbstein, the manager of the defendant's store located on Fifth Avenue, Pittsburgh, Pennsylvania, who had personal knowledge of the injunction of December 20, 1954. The defendant knew that his manager was responsible for these violations.

9. Subsequently, on July 2, 1957, the said William Erbstein, the manager of defendant's Fifth Avenue store, acting within the course and scope of his employment, and with knowledge of the injunction and coercive fine, exhibited, offered to sell and sold, one of the plaintiff's trade-marked irons, model No. F-60, the Fair Trade price of which was $15.95, for $12.75.

10. Again, on July 9, 1957, the said William Erbstein, the manager of defendant's Fifth Avenue store, acting with the knowledge as aforesaid, exhibited, offered to sell and sold, one of the plaintiff's trade-marked irons, model No. F-43, the Fair Trade price of which was $12.95 for $10.25.

11. Said sales were not for the purpose of closing out defendant's stock of said commodities or because said commodities were damaged or deteriorated in quality, and such sales were not made by an officer under the orders of any court or in the execution of any writ of distress.

12. The sales referred to in findings 9 and 10 were made on account of and for the benefit of the defendant.

13. After the pending rule of this court had issued upon the defendant on July 31, 1957, the defendant learned that his said manager had committed the violations of the order of December 20, 1954, referred to in findings 9 and 10,

but took no disciplinary action against his said manager prior to September 23, 1957, the date of hearing thereon.

## Discussion

The temporary injunction issued on December 20, 1954, enjoined the defendant, "his agents and employees", inter alia, from selling at retail in the Commonwealth of Pennsylvania any fair-traded commodities manufactured by the plaintiff at less than the agreed prices.

On nine [1] occasions following the injunction, the defendant or his employees were detected selling plaintiff's fair-traded appliances at a discount. For these violations defendant consented to three fines, viz.: $25.00 imposed on June 8, 1955; $37.50 imposed on November 15, 1955; and $1,000 imposed on January 9, 1957, of which $250.00 was to be paid forthwith and the balance of $750 was suspended, "on condition that if any further violation by defendant of the Order of this Court dated December 20, 1954, is hereafter found by this Court to have occurred within one year after date of this Order, said balance shall be immediately due and payable."

The defendant contends that since he did not personally violate the injunction, a strict construction of the order of January 9, 1957, requires that the rule to show cause should be discharged. He further contends that the facts show that he was not in contempt because he ordered that his General Electric appliances on hand be stored, and in good faith instructed Mr. Erbstein, the manager of his Fifth Avenue store, not to sell any General Electric fair-traded products. We do not agree.

The defendant and his manager both were fully aware of all the orders issued in the case at bar, and had the opportunity to avoid the imposition of the $750 fine by complying with the injunction of December 20, 1954, which plainly extended to plaintiff's agents and employees. Notwithstanding, Erbstein, acting in the scope of his authority and for defendant's benefit, at defendant's store, knowingly violated the injunction twice within one year of January 9, 1957.

That part of the consent decree of January 9, 1957 imposing the conditional fine of $750 was coercive initially; it became compensatory after violation. Referring as it does to the injunction, we think its purpose, intent and scope include violations by employees of defendant acting in his behalf. Being remedial and civil in nature, as distinguished from punitive and criminal, the condition of the fine should not be so strictly construed as to render it virtually impotent.[2]

As to good faith: in view of the three prior adjudications of contempt and the other circumstances, we think defendant's plea of good faith must be rejected. Erbstein, who as manager was admittedly responsible for some of the prior violations, did not personally benefit from the sales; the fact that he was not discharged or otherwise disciplined is indicative of at least tacit approval by the defendant.[3] It is to be noted that defendant's consent to the decree of January 9, 1957, in effect conceded that he was responsible for five violations committed by or under the direction of his manager; for the latter was in charge of the store when those violations occurred. Admittedly responsible then, his subsequent protestations of good faith cannot be countenanced now, and he should pay the fine according to his

---

1. The dates of the violations are as follows: January 3, 1955, January 21, 1955, June 14, 1955, July 29, 1955, September 13, 1956, September 17, 1956, October 29, 1956, November 7, 1956, and December 3, 1956.

2. Terminal R. R. Ass'n v. United States, 1924, 266 U.S. 17, 29, 45 S.Ct. 5, 69

L.Ed. 150; Bigelow v. RKO Radio Pictures, 7 Cir., 1948, 170 F.2d 783; National Labor Relations Bd. v. Hopwood Retinning Co., 2 Cir., 1939, 104 F.2d 302, 304.

3. Cf. Milk Control Commission v. McAllister Farm Dairy, 1956, 384 Pa. 459, 463, 121 A.2d 144, 146.

agreement as the price of continued violation of the injunction.

Defendant also contends "that the punishment for civil contempt is limited, by fine, to the pecuniary injury sustained by plaintiff."[4] Since no evidence was offered to prove that plaintiff suffered loss, damage or expense because of defendant's acts, defendant argues that a fine cannot be imposed. We think his contention is correct as far as it goes, but in civil contempt, a court may also impose a coercive fine conditioned upon defendant's compliance and enforce it in the event of a violation.[5] Further, defendant in this argument seems to forget the fact that he consented to the decree of January 9, 1957 which imposed the compensatory fine of $250 and the coercive fine of $750. Presumably, the propriety of the amounts fixed by the parties was determined by them to be such as was appropriate, first, to compensate plaintiff for past violations; second, to induce future compliance;[6] and, third, to compensate plaintiff in the event of disobedience within one year.

Decrees consented to by parties having the capacity to contract are valid and enforceable according to their terms; indeed, in absence of fraud or mistake, amounts fixed in the consent decree of January 9, 1957 cannot now be altered, and no fraud or mistake is alleged.[7] To permit defendant to escape payment of the fine to which he agreed, we would have to hold that consent decrees entered in civil contempt proceedings are either voidable or unenforceable. This we will not do.

In order to prevent continued contumacy by defendant, plaintiff requests that another coercive fine be imposed. In absence of evidence of defendant's present financial resources, we are of the opinion that this may not be done.[8]

The criminal aspects of the violations of the injunction will be referred to the United States Attorney for appropriate action.

### Conclusions of Law

1. Since January 9, 1957, to-wit, on July 2, 1957 and July 9, 1957, defendant, through his employee, has willfully and knowingly offered for sale and sold at retail the plaintiff's fair-traded commodities at prices which are lower than those established pursuant to plaintiff's fair trade agreements.

2. Said sales were in violation of the Pennsylvania Fair Trade Act and of the order of this court dated December 20, 1954.

3. Said sales constituted a breach of the condition of the suspension of part of the fine imposed by order of court dated January 9, 1957 and the suspended balance of $750 is immediately due and payable, under the terms and by force of said order of January 9, 1957, to which defendant agreed and consented.

4. The purpose of the fine imposed conditionally by the order of January 9, 1957 was to force the defendant into compliance with the court's order of December 20, 1954.

5. Considering the character and magnitude of the harm threatened by the continued contumacy of the defend-

---

4. See defendant's brief, § IV, p. 5. Defendant cites National Drying Machinery Co. v. Ackoff, 3 Cir., 1957, 245 F.2d 192; Boylan v. Detrio, 5 Cir., 1951, 187 F.2d 375; Parker v. United States, 1 Cir., 1946, 153 F.2d 66, 163 A.L.R. 379.

5. United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884; Parker v. United States, supra f. n. 4; Knaus v. Knaus, 1956, 387 Pa. 370, 127 A.2d 669.

6. United States v. United Mine Workers,

supra, f. n. 5, 330 U.S. at page 304, 67 S.Ct. at page 701.

7. Swift & Co. v. United States, 276 U.S. 311, 324 et seq., 48 S.Ct. 311, 72 L.Ed. 587; Thompson v. Maxwell, 95 U.S. 391, 398, 24 L.Ed. 481; May v. Moss, 8 Cir., 1954, 212 F.2d 400; Lustgarten v. Felt & Tarrant Mfg. Co., 3 Cir., 1937, 92 F.2d 277.

8. See United States v. United Mine Workers, supra f. n. 5, 330 U.S. at page 304, 67 S.Ct. at page 701.

ant, the probable effectiveness of the fine to bring about the result desired, and the consent of the defendant thereto, the sum of $750 was not excessive or unreasonable.

■ 6. Since there was no evidence offered by the plaintiff to prove its expenses in bringing the matter before the court for judgment, no compensation for this item should be allowed.

7. In absence of evidence of defendant's financial resources, a coercive fine may not be imposed to enforce future compliance with the injunction of December 20, 1954.

■ 8. The defendant is in contempt of court by reason of said sales referred to in findings of fact 9 and 10 and should be required to pay to General Electric Company the suspended balance of $750, the taxable costs of the hearing held on September 23, 1957, and counsel fees in the sum of $150; and should stand committed until the foregoing is paid, or he is otherwise discharged according to law. See: Parker v. United States, 1 Cir., 1946, 153 F.2d 66, 70, 163 A.L.R. 379; Norstrom v. Wahl, 7 Cir., 1930, 41 F.2d 910; Nichols, Cyclopedia of Federal Procedure, Forms Vol. 3, § 93.12.