**The LONG ISLAND RAIL ROAD COMPANY, Plaintiff,**

v.

**BROTHERHOOD OF RAILROAD TRAINMEN, in its own right and as representative of Road and Yard Conductors, Ticket Collectors, Road and Yard Brakemen and Switchtenders, and also as representative of Special Service Attendants and Club Car Porters, and of Police Officers below the rank of Captain, all employees of The Long Island Rail Road Company, Charles Luna, individually, and as President and representative of the Brotherhood of Railroad Trainmen and the aforementioned employees, Harold J. Pryor, individually, and as General Chairman of the General Grievance Committee of the Brotherhood of Railroad Trainmen-Long Island Rail Road, and as representative of said Brotherhood and the aforementioned employees, et al., Defendants.**

Civ. No. 68 C 1072.

United States District Court
E. D. New York.

March 7, 1969.

---

George M. Onken, Jamaica, N. Y., for plaintiff; James T. Gallagher, Jamaica, N. Y., of counsel.

Thomas J. Higgins, Roslyn Heights, for defendants.

BRUCHHAUSEN, District Judge.

The plaintiff seeks an order, adjudging the defendants in civil contempt of an order of this Court, dated October 19, 1968, supplemented by a further order, dated November 22, 1968.

The plaintiff is a domestic corporation, engaged in business as a common carrier in the transportation of passengers and property, principally on Long Island, in this State. In an average week, it operates over 4,000 scheduled trains, transporting approximately 260,000 passengers on an average weekday.

The defendant Brotherhood of Railroad Trainmen, hereinafter called the Brotherhood, is a labor union, an unincorporated association, representing approximately 1400 employees of plaintiff.

As part of the modernization of the Metropolitan Transportation Authority within the New York Metropolitan area, as mandated by the New York State Legislature, upon recommendation of the Governor, the Authority embarked upon a program to replace all of the plaintiff's pre-World War II electric commuter cars with modern, air-conditioned rolling stock. To implement the program the Authority purchased 620 new cars from the Budd Company, the first two of which were delivered on October 17, 1968.

On February 14, 1968, the defendant, Harold J. Pryor, the General Chairman of the Brotherhood, at the plaintiff's invitation, journeyed to the Budd plant in Philadelphia to inspect the new cars, in process of manufacture. On June 3, 1968, he demanded the employment of 35 new employees in passenger service and threatened a strike on June 26, 1968. On June 25, 1968, the plaintiff invoked the services of the National Mediation Board to prevent the strike.

On or about September 27, 1968, the said defendant stated that members of the Brotherhood would strike on October 1, 1968, at 11 A. M. The plaintiff again invoked the services of the said Board. The said defendant insisted that a conductor and two trainmen be assigned to each car. The plaintiff's representative assured him that no present employee would be laid off.

On October 17, 1968, he again threatened a strike.

On October 19, 1968, the plaintiff applied to this court for a temporary restraining order.

The said defendant's threat to strike was unwarranted. It violated the collectively bargained agreement, between the plaintiff and the Brotherhood. There was a failure on its part to resort to the adjustment and mediation procedures, provided by the Railway Labor Act. Title 45 U.S.C. § 151a thereof sets forth that its purpose is "to avoid any interruption to commerce or to the operation of any carrier" and further, if a railroad company or a union has a grievance, it should submit it to the Board for disposition.

The order of this Court, dated October 19, 1968, in substance, directed that the defendants cease and desist from calling, aiding or participating in a strike, refrain from picketing and take all steps within their power to prevent the threatened strike or work stoppage. It also restrained the plaintiff from placing the new Budd equipment into revenue service pending disposition of the motion for a preliminary injunction.

The collectively bargained agreement between the plaintiff and the Brotherhood provides that time table and crew sheets shall be issued to the trainmen's committee 25 days and to trainmen 10 days in advance of the effective date of such time table. The effective date of the new Time Table No. 4 was November 25, 1968.

On October 28, 1968 proofs of the proposed crew sheets, the men's working assignments, were submitted to the said committee and the plaintiff's representatives offered to meet with the members of the committee to discuss the changes that the plaintiff had made.

The said members delayed meeting until November 11, 1968.

On November 13, 1968, the plaintiff's motion for a preliminary injunction came on to be heard in this court. It was agreed by the attorneys for the plaintiff and the defendants that certain minor disputes be submitted to the Public Law Board, as required by the Railway Labor Act.

Between November 16th and 18th, 1968, the defendant, Harold J. Pryor, instructed the trainmen to refuse to select their assignments as well as the new Time Table No. 4.

On November 22, 1968, at 2:30 P.M. the attorneys for the plaintiff and the defendants appeared before this Court. The plaintiff's attorney then stated that the plaintiff faced problems because of the trainmen's refusal to accept Time Table No. 4 and to make selections of their assignments or crew sheets, also that the Brotherhood had scheduled a mass meeting of the trainmen at Lynbrook on the following afternoon.

Later that afternoon, this Court issued its aforesaid supplemental order, viz:

"Further ordered that the defendants refrain from interfering with the distribution of Time Table No. 4 effective November 25, 1968, and to take all steps within their power to induce plaintiff's employees in passenger train service to accept the crew and collector sheets related to Time Table No. 4 and to accept the work assigned, pursuant to the provisions of the existing collectively bargained agreement."

The plaintiff caused notices of the said order to be posted in its terminals and telephone calls to be made. Telegrams were sent to the trainmen, giving details of the orders and requirements of compliance therewith.

At the said meeting in Lynbrook, the defendant, Harold J. Pryor, read the said order. Some ten members of the Brotherhood carried strike signs. He admitted that he did not explain the order to the trainmen or make efforts to induce them to continue working. He also admitted that upon some four prior occasions, he threatened strikes.

Although time tables and crew sheets were distributed at all of the terminals, none were accepted.

On November 25, 1968 at 12:01 A.M., train service came to a halt.

Hearings on the contempt motion were held on November 25 and 26, 1968. In the course of cross-examination of the said defendant, on the evening of the latter date, the plaintiff's attorney asked him if he was willing to publicly instruct the trainmen to return to work. Thereupon, a recess was taken. Discussions were had, at the conclusion whereof he agreed to the request and gave the instructions, later that evening. The trainmen returned to duty.

■ Upon careful examination and consideration of the evidence, consisting of the testimony, exhibits and the arguments of counsel, the Court concludes that the defendants, Brotherhood of Railroad Trainmen and Harold J. Pryor, violated its order, dated October 19, 1968, as supplemented by its order, dated November 22, 1968.

Decision is reserved on the remaining issues.

### On the Issue of Damages

This Court in its opinion, dated March 7, 1969 ruled that the defendants, Brotherhood of Railroad Trainmen and Harold J. Pryor, violated its order, dated October 19, 1968, as supplemented by its order, dated November 22, 1968. Decision of the issue of damages was reserved. Thereafter, hearings were held to ascertain the damages sustained by violation of the said orders.

It is clear that the plaintiff, the Railroad Company, does not make a profit on any single day of its operation. Its revenue and expenses are computed monthly. The Railroad Company compared revenue and expense figures under normal operating conditions with revenue and expenses under strike conditions. No daily revenue and expense records are maintained. Estimates for the month of November 1968 were made and then allocated to a daily basis. The calculation was then compared with estimated revenue and expenses under strike conditions. The railroad's most significant variable used in these allocations was passenger train mileage. This statistic is computed on a daily basis and certain revenue and expenses of the transportation department correlate with this mileage.

The Railroad Company claims that, during the strike period, it sustained a net loss of income of Four Hundred and Nine Thousand dollars.

Richard S. Camp, a senior financial analyst in the plaintiff's accounting department, testified in considerable detail in support of the said claim and submitted records, which were marked in evidence.

The plaintiff claims an additional loss of income of Nineteen Thousand dollars per diem charges for holding freight cars and for extra help required to mail refunds to passengers, unable to use the line during the said period.

The defendants contended that the plaintiff's proof of damage was largely hearsay, speculative and vague.

■ The Court has broad discretion in the assessment of damages in a civil contempt proceeding. The purpose is to compensate for the damages sustained. The public rights that the said court orders sought to protect are important measures of the remedy. See McComb v. Jacksonville Paper Company, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599, and Parker v. United States, 1 Cir., 153 F.2d 66, 163 A.L.R. 379.

Upon careful review and consideration of the evidence and the applicable law, it is concluded that the plaintiff is entitled to a judgment against the defendants, Brotherhood of Railroad Trainmen and Harold J. Pryor for the sum of One Hundred Thousand dollars.

Settle findings and judgment on ten (10) days' notice.