MEMORANDUM AND ORDER
WOLF, District Judge.
I. INTRODUCTION
This matter is before the court on the plaintiff Rolex Watch U.S.A. Inc.’s (“Rolex”) motion for contempt for violation of the preliminary injunction entered, by consent, against the defendants on June 16, 1987 (the “Preliminary Injunction”). The motion has been addressed as a matter of civil contempt. Hearings, consisting largely of the testimony of witnesses, were held on February 28, March 27, and June 2, 1989.
For the reasons set forth below, the court finds that Rolex has demonstrated by clear and convincing evidence that the defendants willfully disobeyed the Preliminary Injunction. The defendants are, therefore, adjudged in contempt. Accordingly, it will be necessary to determine the amount required to compensate Rolex for the actual damages it sustained as a result of defendants’ failure to comply with the Preliminary Injunction, and to consider an award of costs and reasonable attorney’s fees in connection with this contempt proceeding.
In addition, although the evidence has not indicated that there is a continuing violation of the preliminary injunction, the court reiterates its warning that any future *943 issue of contempt will be addressed as a criminal matter.
II. THE FACTS
The court has considered the testimony of the witnesses and documentary evidence presented at the hearings on the motion for contempt. Particularly careful attention has been paid to the credibility of the witnesses whose testimony was disputed. The court finds that the credible evidence clearly and convincingly establishes the following facts.
On May 21,1987, Rolex filed suit against the defendants, Jack Hoffman, (“Hoffman”), individually, and Jack Hoffman, d/b/a Jack Hoffman Sales, Jack Hoffman, d/b/a J.H. Consolidated Sales and Consolidated Sales Corp (the “defendants”). The suit alleged that the defendants were violating federal trademark law as well as engaging in unfair competition and unfair and deceptive trade practices by selling counterfeit Rolex watches.
When suit was filed, Rolex applied for an ex parte order seeking to enjoin the defendants from using the Rolex trademarks and seeking authority to seize all counterfeit Rolex watches in the possession of the defendants. After a hearing on May 21, 1987, Judge John McNaught granted plaintiff’s requested relief.
On May 22, 1987, the Complaint and the Court’s order were served upon the defendants. Over 300 counterfeit Rolex watches were confiscated from the defendants at that time.
On June 3,1987, the defendants executed a stipulation agreeing that the defendants would be preliminarily enjoined from, among other things, using the Rolex trademark and from selling counterfeit Rolex watches.
On June 16, 1987, this Court entered the Preliminary Injunction, which provided, in relevant part, that:
The defendants and each of their officers, agents, servants, employees, attorneys and all persons acting for, with or under them, directly or indirectly, are immediately preliminarily enjoined and restrained: (a) from using the marks, “ROLEX,” “PRESIDENT,” and/or “Crown Device,” or any reproductions, counterfeit, copy of colorable imitation of said marks in connection with the advertising, offering for sale, or sale of non-Rolex watches and watch bracelets or other products....
On May 1, 1988, L. David Covino, an investigator retained by Rolex’s counsel purchased for $45 a counterfeit Rolex watch from Carol Abbott. Abbott provided Covino with a blank receipt which listed co-defendant, Consolidated Sales Corp. (“Consolidated”), as the vendor. Hoffman is Consolidated’s sole officer and director. The purchase was made from a display table at Dick and Ellie’s Flea Market in Mashpee, Massachusetts (“Dick and Ellie’s”).
On May 15, 1988, Covino returned to Dick and Ellie’s. Once again he spoke to Carol Abbott. After Covino expressed interest in buying more counterfeit, or “replica,” Rolex watches, Abbott went into a van registered to Consolidated and returned with various styles of watches. Co-vino then negotiated the sale of five counterfeit Rolex watches. Abbott initially requested $215 for the five watches. Covino offered to pay $175 cash. Abbott consulted Hoffman, who agreed to accept $175 cash for the five counterfeit Rolex watches.
On May 15, 1988, Douglas Anthony, another Rolex investigator, also bought a counterfeit Rolex watch from Carol Abbott. Anthony paid $40 for the watch, which had been displayed in a case at the Consolidated booth at Dick and Ellie’s.
On May 21,1988, Anthony bought another counterfeit Rolex watch and a “replica” of another maker’s watch for $80, from Hoffman, at Dick and Ellie’s. Anthony told Hoffman he might be interested in buying a quantity of “replica” Rolexes and other counterfeit watches. Hoffman told Anthony that he could sell him such watches and gave Anthony his address and telephone number.
On June 3, 1988, Anthony went to Consolidated’s office in Worcester, where he *944 met with Hoffman. Hoffman showed Anthony about 400 counterfeit watches; approximately 100 were counterfeit Rolex watches. Hoffman told Anthony that it was a felony to sell the watches; that he himself was under a federal court order not to do so; and it was, therefore, necessary to be careful. Hoffman then proceeded to sell 14 watches, including six counterfeit Rolex watches, to Anthony for a total of $325. Hoffman told Anthony that he could sell him additional counterfeit Rolex watches, by the dozen, for about $20 each.
On June 10, 1988, Rolex brought another suit against Hoffman and his co-defendants in a case captioned Rolex Watch U.S.A., Inc. v. Jack Hoffman, et al., C.A. No. 88-1739-WF. In that case, this court granted an ex parte seizure order and a temporary restraining order substantially similar to the Preliminary Injunction.
On June 18,1988, Covino, several Deputy Sheriffs, and attorneys for Rolex returned to Dick and Elbe’s to execute the seizure order. Hoffman and Abbott were present. When Covino asked to see “replica” Rolex watches, Abbott produced a valise containing forty counterfeit Rolex watches. These watches were seized.
On August 23,1988, Rolex initiated these contempt proceedings. Its motion to show cause was supported by an affidavit of Covino. Rolex’s submissions described Co-vino’s purchases on May 1, and May 15, and the June 18, 1988 seizure. Although Rolex also alleged on information and belief that Hoffman engaged in other sales of Rolex watches after the issuance of the Preliminary Injunction, Rolex did not refer to any of Anthony’s activities, including the sales made to him on May 15, May 21 or June 3, 1988.
The elaborate testimony of Abbott, a long time employee and friend of Hoffman, and the brief but unequivocal testimony of Hoffman was fundamentally inconsistent with the facts as the court has found them. The court concludes that Hoffman and Abbott each testified falsely after being advised of their right to counsel, repeatedly warned that giving knowingly false testimony could constitute a prosecutable, criminal offense, and given an opportunity— which they did not accept — to recant their testimony even after it became manifest to the court that they had testified falsely.
By way of illustration only, the court finds that the overwhelming weight of the evidence indicates that the false testimony of Abbott and Hoffman included the following.
Abbott claimed that after the Preliminary Injunction was issued, she traveled on several occasions with Hoffman to New York. She testified that while Hoffman was buying other “replica” watches, she snuck off and bought counterfeit Rolex watches without Hoffman’s knowledge. She also testified that she sold the Rolex watches for her own account, without Hoffman’s knowledge or authority, at Consolidated’s booth at Dick and Elbe’s. Abbott claims to have, in effect, sublet part of the booth from Hoffman.
Abbott gave inconsistent testimony on where she purportedly hid the counterfeit Rolex watches she had for sale. On March 27, 1988, she asserted that they were in a dog food bag in the van. She'equivocated about their location in her testimony on June 2, 1988. Similarly, and more strikingly, Abbott initially testified on March 27, 1989, that in May, 1988 Hoffman discovered that she was selling counterfeit Rolex watches from the Consolidated booth; gave her a “tongue-lashing” and directed her to stop; but she secretly continued to sell them. On June 2, 1988, however, Abbott gave a different rendition of the conversation with Hoffman, claiming that when he discovered that she was selling the counterfeit watches he said he wanted to consult his lawyer, Mr. Pollack, and told her she could liquidate her stock of phony Rolex watches if she paid for a part of the booth and sold them from there.
Finally, for these purposes, although she did not mention it in her March 17, 1989 testimony, on June 2, 1989, Abbott claimed that there was a sign above the display of counterfeit watches which said “These are Replicas;” that' the watch display cases contained slips which said “THIS IS A *945 REPLICA PRODUCT AND IS NOT SOLD OR INTENDED TO BE SOLD AS AN ORIGINAL,” and that it was her practice to give such slips to new customers. None of the many other witnesses, however, saw the purported sign or slips. Nor did Covi-no or Anthony receive such a slip with their purchases.
After consulting Pollack, who served as counsel for his co-defendants, Hoffman reversed an earlier decision not to testify and responded to several questions from Pollack. Hoffman denied possessing or selling “replica” Rolex watches after the Preliminary Injunction was issued. He also denied authorizing Abbott to sell them, or knowing that she was doing so. The court finds all of this testimony to be false.
* * *
The facts as found by the court clearly and convincingly demonstrate that Hoffman, acting for all of the defendants, willfully violated the Preliminary Injunction.
III. FUTURE PROCEEDINGS
As the court has found the defendants in civil contempt, it is necessary to decide the appropriate remedy. On June 2, 1989, Rolex indicated that no further discovery would be needed to accomplish this.
As the Supreme Court and the Court of Appeals for the First Circuit have recognized:
Judicial sanctions in civil contempt may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court’s order, and to compensate the complainant for losses sustained. (Citations omitted). Where compensation is intended, a fine is imposed payable to the complainant. Such a fine must of course be based upon evidence of complainant’s actual loss....
G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 40-41 (1st Cir.1980), quoting United States v. United Mine Workers, 330 U.S. 258, 303-04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947) (emphasis in original). In this case it has not been suggested that the defendants are continuing to disobey the Preliminary Injunction. Thus, the sole question to be addressed is the amount which the defendants should be ordered to pay Rolex for the damages it has sustained as a result of defendants’ contempt.
Rolex contends that it may be entitled to treble damages, as provided for claims of trademark infringement by 15 U.S.C. § 1117. See Broadview Chemical Corp. v. Locite Corp., 311 F.Supp. 447, 449 (D.C.Conn.1970). It appears, however, that any “ ‘compensatory fine’ must necessarily be limited to the actual damages suffered by the injured party as a result of the violation of the injunction.” G. & C. Merriam, 639 F.2d at 41, citing Parker v. United States, 153 F.2d 66, 70 (1st Cir.1946). See also In re Kave, 760 F.2d 343, 351 (1st Cir.1985). “The court has little or no discretion with respect to the amount of a fine for contempt sanctions aimed at compensating past non-compliance, except as to awarding costs and attorneys fees.” Id.
IV. ORDER
Accordingly, it is hereby ORDERED that:
1. The defendants are adjudged in civil contempt of the Preliminary Injunction entered on June 16, 1987.
2. The parties shall by June 30, 1989 seek to agree on an appropriate award of damages, costs and attorneys’ fees and report the result of that effort to the court.
3. If the parties have not agreed on an appropriate award, Rolex shall by July 14, 1989 submit affidavits and memoranda in support of its application for damages, costs and attorneys’ fees; the request for attorneys’ fees shall conform to the requirements described in Denton v. Boilermakers Local 29, 673 F.Supp. 37 (D.Mass.1987). Defendants shall respond to such submissions by August 4, 1989. The court will schedule a further hearing if the filings suggest it is necessary or appropriate to do so.