199 F.Supp. 748 (1961)
CHANEL INDUSTRIES, INC., a corporation, Plaintiff,
v.
PIERRE MARCHE, INC., et al., Defendants.
PARFUMS EVYAN, INC., Plaintiff,
v.
PIERRE MARCHE, INC., et al., Defendants.
Nos. 58 C 332(3), 58 C 333(3).
United States District Court E. D. Missouri, E. D.
November 7, 1961.
Kingsland, Rogers & Ezell, St. Louis, Mo., for plaintiff.
Henry G. Morris, St. Louis, Mo., for defendants.
*749 WEBER, District Judge.
The above two causes were filed in this Court on August 12, 1958. In both causes the complaints alleged infringement of registered trade-marks and unfair competition. The defendants were Pierre Marche, Inc., United Distributors, Inc., United Sales, Inc., all corporations, and Fred Malorrus. Hereinafter the plaintiffs will be referred to as Chanel and Evyan and defendants as Pierre Marche, United Distributors, United Sales and Malorrus. In the Chanel case plaintiff alleged infringement of registered trade-marks "Chanel", "No. 5" and the linked "C" monogram; it also charged that defendants passed off perfume atomizer packages labelled "C. 5" as "Chanel No. 5" perfume. In the Evyan case plaintiff alleged infringement of registered trade-mark "White Shoulders" and accused defendants of passing off perfume atomizers labelled "W.S." as "White Shoulders" perfume.
Defendants answered in both cases and after negotiations between the two plaintiffs and the defendants, a consent judgment was entered in the Chanel case on September 18, 1959, and in the Evyan case on November 20, 1959. Prior to the entry of judgments all the parties entered into an agreement, joined by Beatrice Malorrus, wife of defendant Malorrus, in which they consented that the issues be terminated by an injunction against the defendant corporations but excluding Malorrus individually. However, in paragraph 2 thereof Malorrus agreed that, "notwithstanding his personal exclusion from the terms of the aforesaid injunction, he will in all respects refrain from violating any of the terms of that injunction".
The final judgment in the Chanel case, entered by this Court in accordance with the agreement, provided among other things that:
"12. That the corporate defendants Pierre Marche, Inc., United Distributors, Inc., and United Sales, Inc., and the individual defendant Fred Malorrusinsofar as regards any other business concern owned or controlled by him or by any business concern or person acting under his authorityand the agents, servants, employees, attorneys, successors and assigns of, and all those acting under the authority of or in privity with, said corporate defendants and said other business concerns or person acting under authority of Fred Malorrus, or anyone of them, and each of them, be enjoined from directly or indirectly after October 1, 1959:
"(a) using, in connection with the packaging, labeling, shipping, distribution, offering for sale, sale, advertising or promotion of perfume, cosmetics or any other toilet preparations, the designations `C.5', `C', `5', or any other variation or colorable imitation of plaintiff's trade-marks `Chanel', `No. 5', and the linked `C' monogram:
"(b) representing any of their products as `Chanel No. 5', or `Chanel', or as products of the plaintiff, or as products which may be substituted for or passed off as and for any products of the plaintiff."
* * * * * *
"14. That the corporate defendants shall deliver up to the plaintiff for destruction, on or before October 1, 1959, all perfume and cosmetic labels, packages, and containers in the possession or under the control of said defendants which bear the designations `C.5' or `C'."
The Evyan case judgment is identical, except "White Shoulders" replaces "Chanel" trade-mark and "W.S." and "W." replace "C.5", "C" and "5" and the date for delivery for the destruction of labels, etc., was November 21, 1959.
In the Chanel case the judgment further set forth that plaintiff had continuously affixed to its products sold in Missouri and in interstate commerce throughout the United States, certain trade-marks, including "Chanel", the designation "No. 5" and a linked "C" monogram; that these designations were for perfume and were good and valid *750 trade-marks and properly registered; that perfume so designated customarily sold at retail at prices varying from $20.00 for one ounce to $300.00 for thirty-two ounce size; that plaintiff's products, so identified, have been widely sold and displayed in counter and window displays; that by continued, widespread and exclusive use and advertising the designations mean, identify and distinguish to the trade and to the purchasing public the plaintiff's and only the plaintiff's products; that defendants marketed in Missouri and in commerce between the states perfume and cologne bearing labels reading "C.5" and "C", so similar in design and designation as to be likely to cause confusion or mistake in the minds of the public and to deceive purchasers as to the source and origin of the merchandise; that as such, defendants infringed the plaintiff's registered trade-marks and have unfairly competed with plaintiff. The judgment also provided for $7,000.00 damages.
In the Evyan case the judgment included the same provisions except that it was for the trade-mark "White Shoulders" and the labels "W.S." and "W." and the damages were fixed at $5,500.00.
The suits and judgments thus involved infringement of trade-marks and enjoined defendants' use of the designations which had been used by plaintiffs to identify their products, found defendants had engaged in unfair competition and awarded damages therefor.
On March 29, 1961, both plaintiffs filed their petitions for citation for contempt naming Pierre Marche, Hallmark Distributors, Inc., Malorrus, Jack Yawitz and Jean Catanzaro as respondents and praying that they be adjudged in contempt for the violation of the injunction and be further enjoined from infringement of the trade-marks and unfair competition. Order to show cause issued, returns were filed, the actions were consolidated, and the cause came on to be heard before the Court upon the issues thus joined. A stipulation was filed setting forth that Malorrus was president and treasurer of Pierre Marche and United Sales and Jean Catanzaro, vice president of United Sales.
At the trial the evidence disclosed that Malorrus operated Pierre Marche and United Sales at the time of the suits and judgments and Catanzaro worked in the office keeping the books, filling and shipping orders and taking care of the correspondence. (She was more than a secretary in that she took care of the office while Malorrus was out on the road selling.) For her services Catanzaro received $100.00 to $125.00 per week salary. Both concerns operated from the same premises and were similar organizations.
After the judgment respondent Hallmark Distributors, Inc., was incorporated. The corporation was registered October 6, 1959, but had already begun purchasing inventory from Pierre Marche on September 25, 1959, seven days after the judgment entered in the Chanel case. Hallmark's original stockholders included respondent Yawitz as president, and others. It was organized by the same attorney who represented the defendants in the two law suits. Catanzaro went to work for Hallmark at $125.00 per week and a share in the profits and Malorrus went to work as a salesman.
Malorrus testified that he and Yawitz were good friends, Yawitz operated a drug store and had had business dealings with Malorrus. Hallmark began and continued its operations in the same premises where Pierre Marche operated, used the same storerooms and office space and Catanzaro acted as the business manager of the new corporation. Malorrus kept a small office space for Pierre Marche and United Sales on the same premises and engaged in sales activities for all concerns.
The evidence further showed that the total investment of the incorporators of Hallmark was less than $1,000.00. Hallmark acquired the entire inventory of Pierre Marche on credit. The original money investment went toward the expenses of incorporation, including the attorney's fees. The debt for the acquisition *751 of the inventory of Pierre Marche was to be retired through the earnings of the new corporation. Hallmark paid Catanzaro's salary and Malorrus' commissions, but apparently realized no profit and paid no dividends. Thus, the evidence here shows that Hallmark acquired the inventory of Pierre Marche, continued in business with Pierre Marche's former office manager as its office manager, used the same location, had no assets except the inventory which it acquired on credit, was to pay off its debt for acquisition of the inventory through sale of the products in the inventory and Malorrus was in and around the premises and acted for a period of time as salesman.
The testimony here further showed that Pierre Marche paid $275.00 per month rent for the premises used and when same were taken over by Hallmark, Hallmark paid Malorrus $250.00 per month rent. Yawitz admitted that Catanzaro took care of practically everything concerning the business of Hallmark, she kept the books, made the sales, took care of shipping, billed accounts and and paid the salaries. Malorrus was Hallmark's only regularly employed salesman and drew $200.00 a week plus $100.00 a week expense money. Yawitz admitted that the only instructions he ever gave Catanzaro was to "try to promote business and see if we could show a profit" and to Malorrus, see "if he could do more business, increase it".
The testimony further showed that one Eugene D. Sawan, an employee of the Better Business Bureau of St. Louis and a student at St. Louis University, went to Pierre Marche's office on December 1, 1959. He talked to Catanzaro and to Malorrus and inquired about perfume. He was informed that they only sold to wholesalers or jobbers and he could buy for 40¢ a piece and in lots of one hundred, or $40.00 per hundred. He stated that he discussed perfumes with "C" labelling for Chanel and "A" for Arpege and "M" for My Sin and "W" for White Shoulders; that he saw perfume boxes upon the premises but made no purchase.
Sawan further testified that on June 23, 1960, he went to the drug store of respondent Yawitz and bought some perfumes and talked to him about buying perfumes with the labels "C" on them representing Chanel. He stated that Yawitz told him he was out of the stock at that time, went to the back room and advised that they could be obtained on the 24th. Sawan left a deposit and returned on the 24th and purchased one hundred "C's".
Sawan further testified that on June 28, 1960, he went to Hallmark and talked with Catanzaro and Malorrus. He stated that Malorrus told him that Yawitz was the president of Hallmark and he was only the sales manager, then made a telephone call, after which he (Malorrus) told (Catanzaro) that the witness could have a hundred "C's".
Sawan further testified that on July 12, 1960, he went back to Hallmark and talked to Catanzaro and told her that he wanted Chanel and White Shoulders perfume. He stated that she went out of the room and later a woman came out from the back and handed him a box and Catanzaro then told him that these were the 50 "C's" and 50 "W's".
The witness Sawan identified the various exhibits which he stated he purchased on these occasions as well as receipts received and some pictures taken of the purchases. He testified as to whom the purchases were turned over to, other witnesses testified as to the chain of possession until the time of trial and the exhibits were identified as being the one retained until the date of trial. The transcript does not show, but the Court distinctly remembers, that defendants' counsel repeatedly attempted to mix the exhibits being identified by the plaintiff with comparable items in the hands of defendants' counsel. The Court was aware of what was taking place and the record will disclose that the exhibits were kept from being co-mingled, were wrapped and preserved and properly identified.
The Court attempted to get counsel for respondents to resolve the matter of identification, *752 or to reserve objections until the exhibits were offered in the event the items were not connected. This, counsel either failed or refused to do.
After spending more than a day on the identification of the exhibits, proving the chain of possession and the tying-in of the purchase, the possession and the identification in court, when Malorrus, Catanzaro and Yawitz took the witness stand they admitted making the sales in question to the witness Sawan. This was the matter which the Court had asked the counsel to resolve. These tactics resulted in a large transcript, prolonged trial time, accomplished absolutely nothing, and then resulted in an admission that these items had been sold in the first place.
An examination of the exhibits which were testified to as having been purchased from Yawitz and Hallmark show and disclose that the items purchased contained the designations which were the subject of the judgment of this Court and the agreement prior thereto. The conversations at the time of the sales reveal that "Chanel" and "White Shoulders" were discussed and contemplated.
The testimony here further shows that Malorrus and Catanzaro were active in Pierre Marche and in Hallmark. Both were aware of the situation that existed after the entry of the judgment and both were part of the formation and business management of the new corporation which took over the inventory of Pierre Marche. The actions and the activity of each conclusively show that they had knowledge of the judgments and all that was being done after the judgments.
The record here further shows that Yawitz entered into the formation of Hallmark. That he knew that Pierre Marche and Malorrus had been involved in litigation. That he bought the inventory without any funds and permitted Malorrus and Catanzaro to continue the operation. His activity in regard to the purchase of merchandise and his activity thereafter indicates his awareness and knowledge of the judgments.
The testimony of these parties respondent, their actions and their demeanor upon the stand, their sales of the products in question, all lead this Court to no other conclusion but that all had notice, actual and constructive, and they were aware of the nature and the extent of the judgment of this Court and that they were organizing to circumvent it.

Conclusions.
It is this Court's conclusion that the exhibits purchased by the witness Sawan are products falling within the definition and description of the judgment of this Court and are covered by the injunction. It is the further conclusion of this Court that Pierre Marche and Malorrus had direct notice of the injunction. That respondents Catanzaro and Yawitz were so closely connected and a part of the activities and proceedings that they can be held to have notice thereof. That Malorrus, Catanzaro and Yawitz were in active concert and participation with the affairs of Pierre Marche and Hallmark and through their participation had actual notice of the injunction and its application, and in fact, participated together as officers and employees in the effort to avoid it. It is the further conclusion of this Court that its judgment and injunction have been violated by the action and the activity of the respondents.
The injunctive order of the Court applied to the defendants in the original suit, the agents, servants, employees, attorneys, successors and assigns and all those acting under the authority of or in privity with the corporate defendants. The judgment further provided that defendants should deliver up for destruction all perfume and cosmetic labels, packages and containers in the possession or under the control of the defendants which bore the adjudicated designations. Hallmark was assigned and became the successor of Pierre Marche's inventory. Malorrus instigated the assignment and the formation of the new corporation. Catanzaro, a vital employee of Pierre Marche, assisted in all of the details and became the managing officer of the new *753 corporation. The very fact that Hallmark sold the exhibits in question is proof that the parties did not comply with the order and judgment of the Court prohibiting the use of the designations for the perfume and cosmetics and that they did not deliver them up for destruction.

Conclusions of Law.
Restraining orders of a Court are binding upon parties to the actions, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with those who receive actual notice of the order by personal service or otherwise. Rule 65 (d), F.R.Civ.P., 28 U.S.C.
The injunction of the Court is binding upon the parties-defendant and those in privity with them so that defendants may not nullify a decree by carrying out prohibitive acts through aiders and abettors, although they were not parties to the original proceeding. Moore's Federal Practice, Vol. VII, pp. 1670-75; Regal Knitwear Co. v. N. L. R. B., (1945) 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661.
The Courts have repeatedly held that if a person has actual knowledge of an injunction he may be amenable to it even where not a party to the suit and was not served with a copy of the injunction. Mitchell v. Wilkie Gravel Works, Inc., D.C., 181 F.Supp. 628.
Successors and assigns, not parties to the enforcement order, may become part of it and subject to its prohibitions when they become instrumentalities by which parties-defendant seek to escape and thereby be in active concert or participation in the violation of the injunction. Federal Practice and Procedure, Vol. III, p. 502; Regal Knitwear Co. v. N. L. R. B., supra.
A corporation acts through its officers and agents and the officers and agents, when in control of the corporation, may be responsible for the acts of the corporation. Parker v. United States, 1 Cir., 126 F.2d 370.
The Court may punish those who violate its injunctive orders and disobey or resist its orders, decrees or commands. 18 U.S.C. § 401.
Proceedings in civil contempt are for the purpose of coercing obedience to the decree passed in complainants' favor or to compensate complainants for loss caused by respondents' disobedience of the decree. Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797; Parker v. United States, 1 Cir., 153 F.2d 66, 163 A.L.R. 379.
The parties here agreed that the issue of contempt would be first decided and if decided in favor of complainants, the taking of evidence on damages and attorneys' fees would be subsequently heard and the right to hear subsequent evidence on damages and attorneys' fees was reserved. (See transcript of record 286-288, in which counsel for complainant asked that same be done and counsel for respondents made no objection.) Therefore, it is the Court's conclusion that an order be entered finding Pierre Marche, Inc., a corporation, Hallmark Distributors, Inc., a corporation, Fred Malorrus, Jean Catanzaro, and Jack Yawitz in contempt of court for the violation of the judgments aforesaid. A hearing will be set for the taking of testimony on the matters of damages and attorneys' fees and the Court will reserve its final order until after said hearing.