759 F.2d 671
 RYKO MANUFACTURING CO., Appellant,
v.
EDEN SERVICES, a Maryland Partnership, Fred J. Eden and J.
Erik Eden, Appellees.
RYKO MANUFACTURING CO., James A. Nelson and Julian L. Klein,
Appellants,
v.
EDEN SERVICES, a Maryland Partnership, Fred J. Eden and J.
Erik Eden, Appellees.
 Nos. 84-1378, 84-2603.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 14, 1985.
Decided April 12, 1985.
 
 Robert G. Albee, Des Moines, Iowa, for appellant.
 David O. Stewart, Washington, D.C., for appellees.
 Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Ryko Manufacturing Co. (Ryko) appeals from an order entered in the United States District Court for the Southern District of Iowa granting preliminary injunctive relief. The district court order enjoined Ryko from terminating the distributorship contract with Eden Services (Eden), defined the exclusive territory of Eden to include northern Virginia and required Ryko to pay Eden 150% of the usual commission for all sales made in Eden's territory. For reversal Ryko argues that the district court abused its discretion in granting preliminary injunctive relief, citing Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109 (8th Cir.1981). For the reasons discussed below, we modify the preliminary injunction and affirm the preliminary injunction as modified.
 
 
 2
 Ryko, a manufacturer of car wash equipment, contracted with Eden for the exclusive distribution of Ryko car wash equipment in the Maryland and Washington, D.C., areas. Disputes arose as to sales by Eden in the northern Virginia area, the alleged promotion and sale by Eden of products of Ryko's competitors, and the sale by Eden of Eden's water reclaim system. Approximately 60% of Eden's business is attributable to the sale of Ryko products. An additional 35% of Eden's revenues is derived from the installation and service of Ryko products. Only 2% of Ryko's products is sold through Eden.
 
 
 3
 Ryko brought a declaratory judgment action in February 1983 to determine the rights and responsibilities of the parties under the exclusive distributorship contract. This complaint was later amended to allege breach of contract and an intentional interference with business relationships. Eden counterclaimed against Ryko and asserted violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1961 (1982), breach of contract, fraud, intentional interference with business relations, violation of federal antitrust laws, libel, and slander.
 
 
 4
 On December 28, 1983, Ryko gave notice of termination of the distributorship contract to Eden. This action was enjoined by the district court on February 17, 1984, and Eden was required to post a $20,000 bond. In May 1984 the court defined Eden's exclusive territory for purposes of the preliminary injunction as Maryland, Washington, D.C., and northern Virginia. The bond was reduced from $20,000 to $10,000. Ryko filed timely notices of appeal following the February 1984 and May 1984 orders.
 
 
 5
 In November 1984 the district court modified the preliminary injunction and required Ryko to pay Eden 150% of the usual commission on all sales made in Maryland, northern Virginia, and Washington, D.C. Ryko subsequently appealed this order. Ryko also moved for a stay or modification of the preliminary injunction pending appeal. This motion for stay was denied by the district court and by this court.
 
 
 6
 In Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d at 113, this court established the test for the issuance of a preliminary injunction. The following factors are to be considered by the court: (1) the threat of irreparable harm to the movant, (2) the balance between this harm and the injury that granting the injunction will inflict on other parties or litigants, (3) the probability that movant will succeed on the merits, and (4) the public interest.
 
 
 7
 Enjoining Ryko from terminating Eden's distributorship contract
 
 
 8
 Ryko argues that the district court abused its discretion in enjoining Ryko from terminating Eden's distributorship contract. Ryko further argues that Ryko will probably succeed on the breach of contract claim because the evidence presented to the district court indicated clearly that Eden had sold products of Ryko's competitors and therefore had violated the contract. Ryko introduced letters from Eden to customers concerning Biven-Winchester products. Ryko also argues that Eden's sale of Eden's water reclaim system violates the contract.
 
 
 9
 Eden argues that the letters from Eden to customers concerning Bivens-Winchester products were the result of Ryko's trickery and therefore Ryko may not complain of a breach of contract which Ryko induced. (Ryko had persons request information from Eden about non-Ryko products in order to secure written proof that Eden was selling non-Ryko products.) Eden states that Bivens-Winchester will testify that Eden did not promote or sell its products although some contract negotiations had begun. Lastly, Eden argues that any breach was not material and substantial so as to support a rescission of the contract.
 
 
 10
 Concerning the balancing of hardships, Ryko argues that the competition in the car wash equipment market is very keen and therefore Ryko could be irreparably harmed by Eden's actions, especially toward the national accounts. Eden argues that its business would be destroyed if the contract is terminated because the sales and service of Ryko products account for 95% of Eden's business. Further, Eden argues that it would not be able to finance the present litigation if the contract is terminated.
 
 
 11
 The district court found that Eden would be irreparably harmed and possibly forced out of business by the termination of the contract whereas Ryko would not be seriously harmed if Ryko continued to contract with Eden. Over 95% of Eden's annual revenues of $400,000 is derived from the sales and service of Ryko products. By sharp contrast, only 2% of Ryko's $12 million annual revenues is derived from the sale of Ryko products by Eden. The district court further found that Ryko could be compensated by money damages for any losses it suffered whereas money damages could not fully compensate Eden for the loss of its business. ABA Distributors, Inc. v. Adolph Coors Co., 661 F.2d 712, 714 (8th Cir.1981); Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir.1970). The district court also found that Eden would suffer irreparable harm if Eden was unable to finance the present litigation because of the termination of the contract. Rittmiller v. Blex Oil, Inc., 624 F.2d 857, 861 (8th Cir.1980). On the probability of success question, the district court found that there was a substantial controversy raised by the complaint and a sufficient probability of success to warrant granting injunctive relief to Eden. Lastly, the district court found that the public had a possible interest in having Eden, a small business, continue its business and litigate its antitrust claims.
 
 
 12
 We hold that the district court did not abuse its discretion in enjoining Ryko from terminating the distributorship contract. The district court considered the factors outlined in Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d at 113, and the relief granted is consistent with these findings.
 
 
 13
 Inclusion of northern Virginia in Eden's exclusive territory
 
 
 14
 Ryko argues that the district court changed the status quo which had existed between the parties for months prior to the initiation of the action. Ryko argues that the district court abused its discretion in so doing because the evidence presented does not support the court's order. Ryko argues that no agreement existed between Ryko and Eden concerning northern Virginia and Eden had not made a sale in northern Virginia since 1982--almost two years before this injunction issued.
 
 
 15
 Eden argues that northern Virginia has been part of Eden's territory since 1979 when Eden first entered into an agreement with the Ryko distributor in northern Virginia. After Ryko terminated this distributorship, Eden argues that Eden and Ryko reached an agreement concerning northern Virginia which continued until Ryko unilaterally attempted to cancel the agreement in 1982. Eden made six sales in northern Virginia between 1977 and 1982. Eden argues that Ryko's attempt to take over northern Virginia is part of a larger effort by Ryko to terminate distributorships in more populous areas of the country.
 
 
 16
 The district court abused its discretion in including northern Virginia in Eden's exclusive area. The district court made no findings that this was required in order to maintain the status quo or to prevent irreparable harm to Eden. The evidence was undisputed that Eden had not made sales in northern Virginia for almost two years. Therefore, maintenance of the status quo would require Eden to be prohibited from making sales in northern Virginia during the pendency of the lawsuit.
 
 
 17
 Payment by Ryko to Eden of 150% of the usual commission on all orders made in Eden's exclusive territory
 
 
 18
 Ryko argues that the requirement that Ryko pay 150% of the usual commission was contrary to the distributorship contract and completely changed the status quo between the parties. Ryko argues that Eden is being paid more than the usual commission for doing nothing. Ryko further argues that the district court's assertion that Ryko had requested control of all sales in Eden's area is incorrect; Ryko had requested control only of those sales made to national accounts. Further, Ryko argues that the court did not hear evidence concerning the commission structure existing between Ryko and Eden but simply asked the two attorneys how much each side received from the sale of equipment.
 
 
 19
 Eden argues that the requirement of the payment of the 150% commission was an equitable solution to protect the interest of Ryko and Eden. Eden argues that Eden was prevented by the court's prior order from selling to national accounts (which, as defined by Ryko, includes almost all of Eden's customers); Eden, therefore, was unable to sell Ryko equipment and continue its business. Eden argues that the 100% commission compensated Eden for the commissions it would lose on the actual sales made by Ryko, and the additional 50% commission compensated Eden for those sales that it would lose because it was not making contact with new customers and maintaining contact with old customers.
 
 
 20
 The district court abused its discretion in requiring Ryko to pay Eden 150% of the usual commission for all sales made by Ryko in Eden's territory. The district court made no findings that this payment was required to prevent irreparable harm to Eden. Nor is the injunctive relief tailored to maintain the status quo between Eden and Ryko; no such arrangement had ever existed between Eden and Ryko.
 
 
 21
 Accordingly, we modify the district court's order granting preliminary injunctive relief by vacating that part of the order which designates northern Virginia as part of Eden's exclusive territory and which requires Ryko to pay Eden 150% of the usual commissions on all sales made in Maryland, northern Virginia, and Washington, D.C. The order granting preliminary injunctive relief, as modified, is affirmed.