ST. JUDE MEDICAL, INC., Plaintiff,

v.

INTERMEDICS, INC. and Carbomedics, Inc., Defendants.

CARBOMEDICS, INC., Plaintiff,

v.

ST. JUDE MEDICAL, INC. and Sorin Biomedica, S.P.A., Defendants.

CARBOMEDICS, INC., GA Technologies, Inc., Plaintiffs,

v.

ST. JUDE MEDICAL, INC., Defendant.

Civ. Nos. 4–84–267, 4–84–529 and 4–84–643.

United States District Court, D. Minnesota, Fourth Division.

April 30, 1985.

See also 8 Cir., 764 F.2d 500.

R. Walter Bachman, Lindquist & Vennum, Minneapolis, Minn., and John D. Levine, and Michael E. Bress, Dorsey & Whitney, Minneapolis, Minn., for St. Jude Medical, Inc.

Edmund McCabe, and Sydelle Pittas, McCabe and Gordon, Boston, Mass., and Leon Goodrich, Oppenheimer, Wolff, Fos-

ter, Shepard & Donnelly, St. Paul, Minn., for CarboMedics, Inc. and Intermedics, Inc.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

These actions arise from a manufacturing relationship involving St. Jude Medical, Inc. (St. Jude), Intermedics, Inc. (Intermedics), and CarboMedics, Inc. (CarboMedics). In Civil No. 4-84-267, St. Jude charges CarboMedics and Intermedics with breach of contract, misappropriation of trade secrets by illegal means, conversion, unfair competition and violations of the antitrust laws. In Civil No. 4-84-529, CarboMedics alleges that St. Jude misappropriated its trade secrets and breached several confidentiality agreements. CarboMedics and GA Technologies, Inc. (GA) brought another action, Civil No. 4-84-643, against St. Jude alleging patent infringement. St. Jude has counterclaimed in that suit.

These cases have generated many discovery disputes and many motions. On October 10, 1984, this court granted St. Jude's motion for a preliminary injunction and ordered CarboMedics to begin to manufacture and deliver carbon coated heart valve components to St. Jude. On November 28, 1984, the court denied a motion by CarboMedics to vacate, stay or modify the injunction order. On December 14, 1984, the Eighth Circuit Court of Appeals denied a stay, but remanded the matter to this court to amend its order to make available to CarboMedics a $1,000,000 loan "under normal commercial terms" and to determine the price CarboMedics should receive for the carbon components. By order of December 21, 1984, in this court's absence, the Honorable Paul Magnuson ordered CarboMedics, among other things, to "place orders immediately for the fastest possible delivery of all equipment necessary" to comply with this court's order, and to submit its price and loan materials by January 11, 1985. The loan terms and the interim price of the components, as well as several other motions relating to discovery disputes and sanctions, were referred to Special Master Morris M. Sherman, who was appointed on March 15, 1985. On April 3, 1985, the court partially granted the motion of CarboMedics and Intermedics to dismiss several of St. Jude's causes of action in the amended complaint in Civil No. 4-84-267. The court dismissed causes of action three and four, but granted St. Jude leave to amend its Section 2 Sherman Act claims. The court also denied St. Jude's motion for sanctions related to the Rule 12 motion.[1]

The matter is now before the court upon the motions of St. Jude for further injunctive relief and for civil contempt. St. Jude asks the court to enjoin CarboMedics from disclosing non-public technical information regarding bi-leaflet heart valves or their components to the People's Republic of China (China) and from using any of Intermedics or its allegedly limited resources to make heart valves or components for direct sale in China or pursuant to a joint venture with China, until CarboMedics is meeting the needs of St. Jude. St. Jude also asks the court to find CarboMedics, Intermedics, Jack C. Bokros, and G. Russell Chambers in contempt. It proposes that the corporation be fined $1,000,000 and the individuals $50,000; amounts which could be almost fully reclaimed if CarboMedics began supplying enough components to assemble 600 St. Jude valve sets a week.

### Background

St. Jude contends that the court's November 28, 1984 Order required CarboMedics to meet its demand for heart valves. It states that since October 1984 CarboMedics

---

**1.** In addition, CarboMedics has filed two motions for partial summary judgment. One motion seeks summary judgment on the antitrust claims in St. Jude's first and second cause of action in the amended complaint in Civ. No. 4-84-267. CarboMedics has also moved for summary judgment on St. Jude's fifth cause of action which alleges breach of the parties' 1983 supply contract. The latter motion has not been fully presented to the court as St. Jude's reply materials have not yet been received.

Further review of the factual background can be found in this court's Memorandum Opinion and Order of October 24, 1984.

has had orders from St. Jude requesting delivery of components at a rate enabling St. Jude to assemble 600 usable valve sets per week. It also states that CarboMedics had 6,406 components in the final stages of production at that time. *See* aff. of Robert Akins dated October 30, 1984. Despite its orders and the availability of these components, St. Jude asserts that it did not receive any components until January 14, 1985. During January 1985, St. Jude was able to assemble 144 usable valve sets. In February 1985, it received 2,480 components or 548 usable valve sets. Since February 26, 1985, the weekly shipments have contained 325; 214; 342; and 232 potential valve sets. Aff. of Richard Kramp. St. Jude contends that this amount of valves only supplies 30 to 50% of the worldwide demand.

St. Jude argues that the evidence shows that CarboMedics and Intermedics have consciously decided not to comply with the court's injunction order even though—despite contrary representations made to this court and to the Eighth Circuit Court of Appeals—they are fully capable of doing so. It contends that CarboMedics did not send purchase orders to equipment manufacturers until January 1985 even though this court's injunction order issued three months earlier. Further, St. Jude stated that G. Russell Chambers, Intermedics' Chairman of the Board and sole director of CarboMedics, wrote letters in February 1985 to equipment manufacturers to inform them that Intermedics had not approved CarboMedics' purchases and was not guaranteeing payment on them. Moreover, it states that CarboMedics has decided not to hire the necessary employees to enable it to meet demand.

In addition, St. Jude alleges that CarboMedics, Intermedics and their officers have misled this court and the Court of Appeals concerning CarboMedics' allocation of resources by concealing its crash development and production program for its own bi-leaflet heart valve, the PRC valve, named for China. St. Jude charges that CarboMedics has allocated personnel, funds, and machinery specially tooled for production of St. Jude heart valve components to the PRC program and that the program is geared toward early Food and Drug Administration (FDA) approval for this country. It further states that much of these activities took place when its preliminary injunction motion was pending before the court.

St. Jude summarizes the activity on the PRC valve as follows. It notes that a "PRC Pre-Pilot Production Meeting" was held July 26, 1984, followed the next day by a memorandum detailing test results. St. Jude charges that a flurry of production activity subsequently took place and that CarboMedics hired a consultant on August 29, 1984 to advise it concerning negotiations with China about the establishment of a heart-valve manufacturing facility there. It asserts that negotiations took place with China during September 1984 and that the Shanghai Medical Equipment Research Institute sent CarboMedics a letter that month requesting information, including technical specifications, "concerning the assembly and production of [the] St. Jude artificial valve in China." Testing of the bi-leaflet PRC valve began on September 27, 1984 and continued after the court's injunction order of October 10, 1984, according to St. Jude. In November 14, 1984, a letter of intent was signed by Bokros and a representative of the Shanghai Institute. St. Jude states that $1,500,000 has been allocated to the PRC project and that this and other projects take priority over production of the St. Jude valve components.

CarboMedics takes issue with St. Jude's factual presentation, as well as its interpretation of the facts. It states that the court's previous orders have not required it to supply St. Jude with 500–600 valve sets per week, nor does the parties' 1983 supply contract provide that CarboMedics will supply all of St. Jude's requirements. It argues that worldwide demand cannot be defined and that supply of 500–600 valve sets would allow St. Jude to restock its inventory. CarboMedics notes that St. Jude reduced its requirements in May 1983 to 300 valve sets per week and suggests that this

figure might be the true indication of demand.

CarboMedics states that it took immediate steps in response to the court's injunction order, but sought interim relief because compliance placed Intermedics in jeopardy of default of its loan agreements. It asserts that deliveries did not commence until January because St. Jude refused to specify visual acceptance standards for the heart valve components. It also states that it is impractical for it to produce more than 200 to 250 valve sets a week when St. Jude intends to stop taking deliveries as soon as it finds a second source.

In addition, CarboMedics states that this court's order of November 28, 1984 did not require St. Jude to be granted top priority in production at the expense of its other customers. Accordingly, CarboMedics' vice president in charge of operations decided that production of St. Jude components should be added at the bottom of the pre-existing projects and products going through the shop. CarboMedics asserts, however, that it has purchased additional equipment to produce components for St. Jude and that production of these components has higher priority than several other heart valve component orders. *See* Akins depo. at 108–109. It argues further that good faith required G. Russell Chambers to inform machine manufacturers that Intermedics' credit was not available to CarboMedics in these particular transactions.

CarboMedics asserts that its PRC project was one of these pre-existing projects and that it was a direct response to the revenue void left by the loss of St. Jude's business in 1983. It states that the exhibits filed by St. Jude show that the attempted development of a PRC valve was under way months before the court entered its injunction. CarboMedics asserts that the PRC project is still in the research and development stage at this point [2] and that production of the PRC valve has had to take its turn in pre-existing production plans and

schedules. It asserts that costs to develop and study the valve have totalled only $320,183 thus far, and that it expects to incur costs of approximately $480,000 in 1985, rather than the $1,500,000 St. Jude alleges. CarboMedics also states that it has not revealed non-public technical information concerning the St. Jude valve to China.

*Discussion*

### A. Motion for Further Injunctive Relief

■ Whether further injunctive relief should be granted depends upon the showing made on the following factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Systems v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981). The Court of Appeals in *Dataphase* stressed that the ultimate question in granting preliminary relief is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." 640 F.2d at 113. The court's Memorandum Opinion and Order of October 10, 1984 and its Order of November 28, 1984 sought to maintain a status quo until the merits of the action could be determined. Accordingly, the court's injunction reinstated the parties' recently-severed manufacturing relationship and ordered CarboMedics to continue to supply components to St. Jude in the interim period before trial.

■ After carefully evaluating the parties' arguments, the court finds that St. Jude's present injunction request seeks relief beyond the maintenance of a status quo. St. Jude, in effect, asks this court to run CarboMedics' business in a detailed day-to-day manner, by dictating which projects must be held in abeyance and

---

**2.** CarboMedics states that it abandoned its first conception, the "PRC I" in favor of a new design, the "PRC II", late in 1984. If testing begins

as scheduled, it will take at least 15 months. Bokros aff.

which must be accelerated. Such involvement by the court is inappropriate. The previous injunction order sought to maintain a status quo by ordering CarboMedics to produce components for St. Jude, but it allowed CarboMedics discretion in arranging its business to do so while carrying on with other projects. The current relief requested would involve the court in the management of CarboMedics' business.

In addition, the relief requested by St. Jude is not justified by the *Dataphase* factors. St. Jude argues that it will be irreparably harmed by CarboMedics' continued refusal to supply St. Jude with components and by disclosure of its trade secrets to a foreign government. CarboMedics counters by pointing to St. Jude's record sales and earnings in 1984.

 The court recognizes that St. Jude's earnings for 1984 are artificially inflated to the extent it did not pay for replacement inventory, but it is currently being supplied with a steady flow of components. The situation is different from when the previous injunction issued; then St. Jude was receiving no components at all. Certainly St. Jude would like to receive more components, but St. Jude is at least able to carry on some business of supplying heart valves pending trial on the merits. Moreover, St. Jude has not demonstrated that CarboMedics intends to disclose or has disclosed St. Jude's non-public technical information to China. The absence of a showing of irreparable harm is sufficient grounds upon which to deny a preliminary injunction. *E.g., Harris v.*

*United States,* 745 F.2d 535, 536 (8th Cir. 1984).[3]

Further, the balance of harms does not favor St. Jude in its quest for further injunctive relief. Unlike the situation in October, 1984, St. Jude is receiving heart valve components from CarboMedics and CarboMedics is suffering some dislocation of its business to provide those components. While St. Jude is undoubtedly harmed by its inability to receive 100% of its component needs, this harm is not irreparable and does not exceed the harm that CarboMedics would suffer if this court were to order cessation of the PRC project.

St. Jude asserts that it has established a likelihood of success on the issues of supply and of CarboMedics' disclosure of confidential information to China. The evidence produced by St. Jude at this point does not demonstrate that St. Jude will succeed on the Chinese disclosure issue. As noted in the October 10, 1984, Memorandum Opinion and Order, the record does demonstrate that St. Jude has raised substantial questions which call for more detailed exploration concerning the supply contract.[4] Unlike the situation then, however, the other equities do not persuade the court that further injunctive relief should issue at this time.

Finally, St. Jude has not demonstrated that the public interest is best served by issuance of further injunctive relief. The public undoubtedly benefits from the continued availability of what was last year the most widely-prescribed mechanical heart valve in the United States. That valve is now being supplied to some extent

---

3. St. Jude argues that injunctive relief is appropriate under Section 16 of the Clayton Act, 15 U.S.C. § 26. It contends that it need not prove actual injury but must only show a significant threat of injury from an impending violation of the antitrust law. It cites *Rosebrough Monument Co. v. Memorial Park Cemetary Ass'n,* 666 F.2d 1130, 1147 (8th Cir.1981), *cert. denied,* 457 U.S. 1111, 102 S.Ct. 2915, 73 L.Ed.2d 1321 (1982), for that proposition. *Rosebrough* is distinguishable, however, because a determination had already been made in that case that the antitrust laws had been violated. In the instant case, no such determination has been made. Moreover, Section 16 specifically provides that

injunctions should issue under "the same conditions ... as injunctive relief ... is granted by courts of equity ... and upon ... a showing that the danger of irreparable loss or damage is immediate ...." 15 U.S.C. § 26. Section 16, therefore, does not provide authority for the issuance of an injunction where St. Jude has not demonstrated irreparable harm.

4. CarboMedics' motion for partial summary judgment on the supply contract is not properly before the court at this time as St. Jude has not yet submitted its responsive materials.

by St. Jude, however. While St. Jude asserts that a rate of 200–250 valve sets a week forces it to ration its valves, it does not supply the court with evidence detailing the amount of valves required by hospitals, patients or surgeons. Moreover, the public also has an interest in research and development programs which may lead to a better type of heart valve. At this point in the proceedings, the court does not have the necessary information to analyze the quality of CarboMedics' PRC valve even if it were appropriate to do so. Upon the evidence presented by St. Jude, however, the court finds that the equities do not justify enjoining CarboMedics from proceeding with the PRC project. Such an injunction would alter rather than maintain the status quo. *See Ryko Manufacturing Co. v. Eden Services*, 759 F.2d 671, 674 (8th Cir. 1985).

### B. Motion for Civil Contempt

■ A court may enforce a preliminary injunction by holding a violator in civil contempt and granting remedial relief to the party injured by violation of the order. *Magnesco Restaurants v. Arthur Treacher's Fish & Chips, Inc.*, 689 F.2d 1150 (3rd Cir.1982); *Chanel Industries, Inc. v. Pierre Marche, Inc.*, 199 F.Supp. 748 (E.D. Mo.1961). *United States Steel Corporation v. United Steel of America*, 398 F.Supp. 449 (D.Minn.1975). Presentation of clear and convincing evidence is sufficient to warrant imposition of a civil contempt sanction. *N.L.R.B. v. Blevins Popcorn Co.*, 659 F.2d 1173, 1183 (D.C.Cir. 1981); *see* Wright & Miller, *Federal Practice and Procedure*, Civil Vol. 10 & 10A § 2960, p. 591 (1973).

■ St. Jude has shown that CarboMedics has construed the court's orders in a hyper-technical manner so as to excuse noncompliance with the spirit of the orders. For example, deposition testimony indicates that CarboMedics did not order the necessary equipment to comply with the injunction until almost three months after entry of this court's October 10, 1984 order. The refusal to buy equipment continued even after the Court of Appeals had denied a stay on December 14, 1984. St. Jude charges that this conduct resulted from CarboMedics construing the injunction as not requiring the taking of steps necessary to begin immediate production of St. Jude components. CarboMedics has also suggested to the Court of Appeals that it cannot accept the $1,000,000 loan offered by St. Jude on December 14, 1985 until this court determines the contested loan terms.

St. Jude has also shown that CarboMedics has been less than candid in describing its attempt to comply with this court's injunction order. No mention was made to this court until November, 1984 about the alleged impossibility of complying with the injunction order St. Jude first proposed in August of 1984. Nor was any mention made of the PRC valve project until the present motions were brought by St. Jude. CarboMedics has submitted a number of reasons why it states it has not consistently produced components for more than 250 heart valve sets per week. St. Jude has demonstrated that several of these excuses are "red herrings".

Although this showing by St. Jude suggests that CarboMedics, its parent, and their officers may not be complying in good faith with the court's previous injunction order, the court cannot conclude from the present record that a weekly supply of 200–250 valve sets constitutes contempt. It appears that CarboMedics can supply more components than this, but the court is uncertain as to the specific level CarboMedics should be producing. St. Jude states that the current amount satisfies, at best, only 50% of the worldwide demand, but it has not submitted data to support this assertion. Moreover, it is not clear what level of valve sets per week would continue the status quo between the parties. While the parties' 1983 supply contract granted St. Jude the right to purchase at least 600 valve sets a week for ten of 12 months, St. Jude notified CarboMedics in May 1983 that it only needed 300 valve sets per week for the balance of the year. Under these circumstances, St. Jude's motion must be denied at this time.

St. Jude has made enough of a showing, however, to justify referring the issue of compliance to the Special Master for a report. The Master shall make findings as to what number of weekly valve sets would preserve the status quo in this interim period before a resolution of the merits is reached and whether CarboMedics should be required to manufacture that amount for St. Jude in order to comply in good faith with this court's injunction. The parties shall have ten days after issuance of this order to supply the Special Master with pertinent materials on this issue.

## ORDER

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The motion of St. Jude Medical, Inc. for further injunctive relief is denied.

2. The motion of St. Jude Medical, Inc. for civil contempt is denied at this time.

3. The issue of compliance with this court's injunction is referred to Special Master Morris M. Sherman for his report and recommendation concerning the matters mentioned in the final paragraph of this memorandum opinion. The parties shall have ten days after issuance of this order to submit materials on compliance to the Special Master.